## THE STATE v. GARTH, Appellant.

### Division Two, November 12, 1901.

1. **Juror: QUALIFYING: INTERMINABLE EXAMINATION.** Where a juror stated that he had not formed or expressed an opinion as to the guilt or innocence of defendant, and knew nothing of the case, it was not error to overrule a question by defendant's counsel asking him if he had formed or expressed an opinion as to whether or not deceased was stabbed and died from a stab wound.

2. **Dying Declaration: STATEMENT PREVIOUSLY WRITTEN: IN EXTREMIS.** Where the declaration was written as declarant made her statement, and she stated, in response to a question if she believed she was in the presence of death, "Sometimes I think I am, sometimes I think not," and she was informed that she would not be permitted to sign it then because she "sometimes thought she would not die," and afterwards when she had grown worse she said "she was very sick and she didn't think she would get well, and if they wanted her to sign the statement she had better do it then," and then signed it, at a time when the attendant physician and nurses considered her *in extremis* and the sequel showed their judgment to be correct, no error was committed in admitting the statement in evidence as a dying declaration.

3. **Defendant's Admission.** It is not error to admit defendant's admission of the homicide if it was made voluntarily, without any threats or promises by the officer to whom made.

4. **Habits of Deceased: CAUSE OF DEATH: EXCEPTIONS.** The exclusion of evidence that the drinking habits of deceased contributed to her death is not open to review on appeal if no exception was saved to such exclusion.

5. **Coroner's Certificate of Death: COPY: EVIDENCE.** A copy of the coroner's certificate of deceased's death is not evidence in this State.

6. **Murder: INSTRUCTION: OMISSION OF WORD FELONIOUSLY.** The word "feloniously" is merely descriptive of the offense, and where all the

constitutive elements of the crime of murder in the first degree are stated in the instruction, it is not error to omit that word from the instruction, nor is it necessary to define it if used.

7. ———: ———: CONCURRENCE BY ALL THE JURY. It is not error to refuse to instruct, in a murder case, that every member of the jury must concur in the guilt of defendant and in the degree of that guilt. Such instruction is an unnecessary reflection on the jury.

8. ———: ———: SINGLING OUT MATERIAL FACTS. The defendant has no right to single out each material fact and require the court to direct the jury that if they have any reasonable doubt as to the evidence of such facts they should acquit. In this case, where defendant was charged with killing deceased by a stab in the breast with a knife, defendant asked the court to instruct the jury that if they had a reasonable doubt as to whether the death of deceased was caused by the cut and wound, they should acquit; and it is held that such instruction was properly refused.

9. ———: SUFFICIENCY OF EVIDENCE. Where there is evidence of deadly threats, ample time to deliberate, the use of a deadly weapon, premeditation and malice aforethought, the verdict of murder in the first degree will not be disturbed by the appellate court on the ground that the evidence did not warrant it.

Appeal from Jackson Criminal Court.—*Hon. Jno. W. Wofford*, Judge.

AFFIRMED.

*James J. Hitt* and *W. O. Thomas* for appellant.

(1) Two things are absolutely necessary to make a dying declaration admissible, viz.: First, the party must at least suppose himself *in extremis;* second, where it is possible, the exact language of the party must be given. It is not sufficient that the substance be given. (2) The admission of the alleged confession of the defendant was error. As soon as arrested the defendant was taken to the office of the prosecuting attorney.

There, the paper read in evidence was prepared by the same officer who wrote the "dying declaration." There, while laboring under the excitement of a recent arrest, charged with an offense the punishment of which is death, "without a full knowledge of all the effects, and of the consequences that would result therefrom," the statement was signed. The fact, too, that he was an ignorant negro, and in the presence of an officer who was using every means to induce a confession, should have some weight. State v. German, 54 Mo. 526; State v. Fredericks, 85 Mo. 145. (3) The court erred in giving instruction 2. In instruction 1 the court very properly described the offense of murder in the first degree. But when he came to apply the definition of murder to the case at bar, he omitted a very essential, and we may say the most essential element, viz.: the feloniousness of the act. "Where an instruction incorrectly defines the crime of murder in the first degree, the judgment will be reversed, although in another instruction given the crime is correctly defined." State v. Mitchell, 64 Mo. 191. State v. Walker, 98 Mo. 95, is not supported by the authorities cited as a precedent. Especially is the omission of the word "feloniously" from the instruction error, when we notice the definition of the words "malice aforethought" and "feloniously" as given in the first instruction. State v. Grant, 76 Mo. 247; State v. Snell, 78 Mo. 241. (4) In all criminal cases a concurrence of all twelve of the jurors is necessary, both as to the guilt and degree of that guilt. Compromise verdicts are not tolerated. Defendant's third instruction asked is undoubtedly the law. The question presented was, What caused the death of Minnie Woods? If any juror had a reasonable doubt as to whether she died from natural causes or the stab wound, then the defendant was entitled to the benefit of that doubt, and the jury should have been so told. (5) The evidence, taken as a whole, fails to show the

State v. Garth.

defendant guilty of felonious, willful, deliberate murder, committed premeditatedly and of his malice aforethought. At most the evidence shows that the stab was given in the heat of passion, without any premeditation or deliberation or intention of killing. State v. Craft, 3 Kan. 451. There was that lack of evidence of deliberation and premeditation necessary to constitute murder in the first degree. State v. Davidson, 95 Mo. 95; State v. Elliott, 98 Mo. 150; State v. O'Hara, 92 Mo. 59.

*Edward C. Crow,* Attorney-General, for the State; *H. S. Hadley* of counsel.

(1)   It will be seen by the questions and answers that the juror knew nothing about the case; if he had read of it he had forgotten all about it and he had formed or expressed no opinion as to the guilt or innocence of the defendant. It could have served no good purpose under these circumstances to have permitted an extended examination as to whether the juror had formed or expressed an opinion upon every possible inquiry that might be embraced in the issues to be tried, especially as the juror had already answered that he knew nothing about the case and could not even remember to have read of it.    (2)   The record in this case clearly shows, beyond doubt, that the deceased was stabbed; that she died of the wound.   This being so, even if the juror had formed an opinion that the deceased was stabbed and died of the wound, and also that the defendant stabbed her, this would not disqualify him, because it might be the act was done in self-defense or was accidental, and hence, the defendant would not be guilty as charged.   Thompson & Merriam on Jurors, sec. 217; Lowenburg v. People, 27 N. Y. 336; Olrien v. People, 36 N. Y. 276; 63 Ala. 30; 9 Ia. 188; 1 Trial of Aaron Burr,

pp. 416, 417.    The line of interrogation indicated by the questions put, if permitted, would tend to make such examinations interminable, without any corresponding beneficial results.    State v. Munch, 57 Mo. App. 212; McComas v. Ins. Co., 56 Mo. 574.    (3)    The last remark of deceased is very significant.    She knew the statement had been left unsigned at the time it was taken down because she then had some slight hopes of life, and that she was to sign it if she became convinced that there was no hope for her and that she believed herself to be in the immediate presence of death.    It is impossible to escape from the conclusion that when she said, "If they want me to sign it I had better sign it now," she had abandoned all hope of recovery and expected death to come at any moment.    This being so, the statement so signed was admissible.    State v. Elkins, 121 Mo. 344; State v. Wilson, 121 Mo. 439; State v. Umble, 112 Mo. 452; State v. Evans, 124 Mo. 409; 12 Cox. C. C. 168; Young v. Com., 6 Bush, 312; Mackabee v. Com., 78 Ky. 380; Wharton Crim. Ev. (9 Ed.), sec. 287; State v. Wensell, 98 Mo. 137.    (4)    Defendant's third assignment of error, that the court erred in admitting the signed statement of defendant in evidence is without merit.    The statement was made to and written down by Mr. Mastin, who told him that he was an assistant prosecuting attorney, and asked the defendant to tell him about the occurrence.    No threats were made, no inducements held out to defendant, he was not deceived nor in any way influenced to make his statement, it was entirely voluntary.    State v. McKurtz, 144 Mo. 40; State v. Vaughan, 152 Mo. 73; State v. Guy, 69 Mo. 430; State v. Rush, 95 Mo. 199; State v. McClain, 137 Mo. 307.    The mere fact that a person is in charge of an officer at the time does not make a confession inadmissible.    State v. Carlisle, 57 Mo. 679.    (5)    Defendant's fourth assignment of error is, that the court erred in rejecting testi-

mony that the deceased was in the habit of drinking or using intoxicating liquors to excess, and the inordinate use of cigarettes. This assignment of error is unfair and not warranted by the record. This evidence was inadmissible; it was immaterial what the habits of the deceased were, or how such habits may have affected her health. The question was, did the defendant stab the deceased, and did she die from the stab wound? Nor did such evidence become admissible to show the condition of deceased at the time of her death. But if such evidence was admissible the defendant has no cause of complaint, for the reason that the court did permit the facts to be shown as to the habits of the deceased. Besides, no exception was saved to the ruling of the court on the question as to what effect drinking has upon pleurisy. (6) The certificate of death made by the coroner is inadmissible. It does not fall within the provisions of section 3098, Revised Statutes 1899. It is neither a record nor exemplification of office books kept in any public office of the United States, nor of a sister State. State v. Ragels, 9 Mo. 310. (7) The court did not err in failing to put the word "feloniously" in instruction 2, defining murder in the first degree. This court has decided this to be unnecessary. State v. Walker, 98 Mo. 95; State v. Matthews, 98 Mo. 121; State v. Wright, 134 Mo. 404. (8) Instruction 3 asked by defendant and refused by the court was, "If the jury has a reasonable doubt as to whether the death of Minnie Woods was caused by the cut and wound, then you should give the benefit of that doubt to the defendant." This is not the law. "It is well settled in Missouri, that the defendant has no right to single out each material fact, and to have the court direct the jury that if they have a reasonable doubt as to the evidence of such fact they ought to acquit." State v. Wells, 111 Mo. 536; State v. Schoenwald, 31 Mo. 147; State v. Christian, 66 Mo. 138. (9)

Defendant's eighth assignment of error is mainly a claim that the defendant is not guilty of murder in the first degree, and that the court should have granted him a new trial. It is hard to find a jury with sufficient courage to convict of murder in the first degree, when the evidence fully warrants such a verdict, and the cases are rare, indeed, where the courts have to set aside verdicts of murder in the first degree because the evidence does not sustain a verdict. There was deliberation, premeditation and malice aforethought; and the stab wound given to deceased by the defendant was the cause of her death. It may have been done while the defendant was in a passion, but it was a murderous passion; not one recognized by law as lowering the grade of the homicide.

GANTT, J.—The defendant, a negro man, was indicted at the January term, 1900, of the Jackson County Criminal Court, for the murder of Minnie Woods, a negress with whom he had been living though not married to her, he having a wife and children elsewhere. Having been duly arraigned and pleaded "not guilty," defendant was placed on trial March 14, 1900, and found guilty of murder in the first degree.

The indictment is sufficient.

The evidence discloses that on the night of December 23, 1899, there was a chitterling supper and dance held at 2218 East Ninth street, Kansas City, at the house of a negro woman by the name of Henrietta Gray. The defendant seems to have become jealous of the deceased and made threats that he would "kill the damn whore that night," and when remonstrated with and warned that he might get into the penitentiary, said he didn't care, he felt "jaily." After the party had broken up, defendant called for the deceased who was in the next room, to come and help put up the bed. She claimed not to have heard him, and when she did come into the room and said she did

not hear him, he called her a "damned liar." They had a few words and the deceased went into the kitchen, whither he followed her; then she started to go into the front room, still quarreling, and he followed her. He overtook her, knocked her down, and kicked her, got onto her with his knees, and was pulled off by Lewis Anthony, and while being held by Anthony he pulled out a knife, opened it, and made Anthony turn him loose. Then after making a rush for the sister of the deceased, who got out of his way, he started for the kitchen, where the deceased had gone, and met her in the doorway. Anthony grabbed him again, and while being held by Anthony, he succeeded in stabbing the deceased in the breast, after which he left the house, and was not captured until some three or four days later, when he was found in a house with another woman, in hiding under the bed.

The knife did not penetrate the cavity, but it cut some of the arteries in the breast, and she nearly bled to death before medical assistance could be secured. As she was moved about from the floor where she fell to the bed and from the bed to the stretcher to be taken to the ambulance, the blood gushed and spurted out. At the police station she was in a condition of collapse, being practically pulseless. The police surgeon did not think she could live to get to the hospital. He hurriedly dressed and packed the wound and staunched the flow of blood, gave her some medicine to stimulate her heart action, and sent her to the city hospital, in an unconscious condition, where she was immediately treated by the transfusion of salt solution into her veins to take the place of the blood lost, so as to keep up the heart action. She revived somewhat after this and lived for several days, her condition being all the time very low. Her condition was, as described on the twenty-seventh, "very low, she was in an unconscious or semiconscious condition, very weak, very rapid pulse, very rapid respiration, suffering great

pain, status pneumonia, being in one position in bed for some length of time, condition very low, she was practically as low as when she came in." Q. "Status pneumonia is lying in bed in one position?" A. "Yes, sir." Q. "What made her lie in the position?" A. "The wound." Q. "What is that caused by?" A. "By the patient being compelled to lie in bed in one position." Her condition continued much the same until she died on January 1, 1900, in the city hospital, Kansas City, Missouri.

The medical testimony was to the effect that the wound was not necessarily fatal if the wounded woman could have had competent surgical attention at once, that is to say, within ten minutes after its infliction, but so much time had elapsed and she had lost so much blood before she reached the police surgeon, Dr. Manahan, that no doubt can be entertained that it was the immediate cause of her death. It appears that she received prompt and skillful attention and treatment from the time she reached the city hall until her death in the city hospital, and the evidence disclosed she was taken to the police surgeon as rapidly as possible after the police learned of the difficulty, which was almost immediately.

After stabbing the woman, defendant fled and was apprehended some days later, while hiding under a bed on what is denominated "Can Alley," a part of Harrison street. After his arrest, defendant made a statement in which he admitted he was in the difficulty with the deceased, but said he didn't know he cut her, and if he did it was accidental. Deceased made a dying statement.

Various points are urged for reversal, all of which will be considered.

I. The first assignment of error is that the court erred in refusing to permit counsel for defendant to ask the juror,

Vol 164 mo—36

G. E. Hudson, on his *voir dire,* whether he had formed or expressed an opinion as to whether Minnie Woods, the deceased, was stabbed and whether she had died from a stab wound.

This juror had previously stated that he knew nothing about the case and had not formed or expressed any opinion about the guilt or innocence of defendant; that he might have read something about the matter in the newspapers at the time, but had no recollection of it at that time. It was after these answers that counsel for defendant propounded the questions as to whether he had formed an opinion whether deceased was stabbed or died from a stab. While the greatest latitude is allowed counsel for defendant on *voir dire* examination in order to test the indifference of the juror it is obvious neither of these questions would have assisted counsel in making his challenges. The issue to which the juror must respond if selected was the guilt or innocence of the defendant of the crime with which he was charged.

It is not an unsound exercise of discretion for the trial court to limit the examination by defendant on *voir dire* when the line of interrogation indicated by the questions put, if permitted, would tend to make such examinations interminable, without any corresponding beneficial results. [Trial of Aaron Burr, pp. 416, 417; State v. Brooks, 92 Mo. 574.]

As the fact that the deceased came to her death from a stab was practically a conceded fact, it is perfectly clear that no prejudice resulted from the refusal of the court to permit further questions along this line.

II. It is objected that the dying declarations of the deceased was improperly allowed to go to the jury.

From the moment the wounded woman reached the hospital, she was considered *in extremis* by the physicians and nurses in charge, and it seems they so advised the assistant prosecuting attorney, and at their request he went to see her. She made

him her statement of the difficulty which resulted in her death, but when the attorney inquired of her if she believed she was in the presence of death she answered, "Sometimes I think I am, sometimes I think not," and although he had prepared her statement he would not under these circumstances have her sign the statement. When she afterwards grew much worse, Mr. Westlake, acting physician to the house surgeon, told her she was very sick; that the chances were she would die, and to him she said, "She was very sick and she didn't think she would get well, and if they wanted her to sign the statement she had better do it then."

She had been fully informed why they didn't want her to make the statement before, viz., because "she thought sometimes she would not die," and now when she had become convinced she could not live, she herself concluded that if it was ever to be made she should do it then.

When the nurses and physicians all considered her *in extremis*, and the sequel shows they were correct in their judgment, and she had indicated she was ready to make it, Mr. Westlake read over the statement she had already made, and which had been reduced to writing, and she signed it and he witnessed it.

It was ruled by this court in State v. Evans, 124 Mo. loc. cit. 409, that where prior declarations are inadmissible at their first utterance, they may become admissible when subsequently the declarant becomes conscious that he is dying and reaffirms his former statements. [Wharton's Crim. Ev. (9 Ed.), sec. 287; Regina v. Steele, 12 Cox C. C., 168.]

We think the evidence abundantly shows that the declaration of the deceased was made under a well-founded apprehension of immediate death, and that she had abandoned all hope of recovery, and no error was committed in receiving it in evidence. [State v. Wilson, 121 Mo. 442.]

III.   The statement of the defendant was properly admitted, as there appears to have been no pressure brought to bear upon him to make it.   On the contrary, the evidence is that he made it voluntarily, without any threats or promises by the officer to whom he made it.

But when he admitted it was of slight, if any, value to the State, it simply formed a basis for the contention of defendant that he accidentally killed the deceased when all the other evidence tended to show a willful, deliberate and premeditated murder.

IV.   We agree with the prosecuting attorney that there was no evidence that the deceased was a drinking woman to an extent which contributed to her death in the slightest degree, and consequently no error was committed in excluding further evidence on that line, but as a matter of fact no exceptions were saved to the action of the court though an opportunity to do so was expressly extended to counsel.   That assignment is not before us for review if it had any merit otherwise.

V.   The defendant offered a copy of a certain certificate of death purporting to have been made by the coroner, which was excluded by the court, and this is assigned as error.   We think unquestionably the court committed no error in excluding the copy.   No law of this State makes a copy of such a certificate evidence.   While it is true the learned judge said he would rule out the original if it were present, if counsel desired to convict him of error, they should have offered the original in evidence.   As it is, there is no pretense that the coroner ever saw the wounded woman in her life, nor that he was present at the autopsy after her death.

VI.   Error is predicated, also, on the omission of the word "feloniously" from the second instruction by the State, which was in this language:

•    "The court instructs the jury that if you find and believe

from the evidence that at the county of Jackson and State of
Missouri, at any time before the fifth day of January, 1900,
the defendant willfully, deliberately, premeditatedly and of
his malice aforethought, did with a certain knife, and that the
same was a dangerous and deadly weapon, cut, stab and wound
one Minnie Woods, inflicting upon her a mortal wound, from
which said mortal wound the said Minnie Woods at the county
of Jackson and State of Missouri, died, then you will find the
defendant guilty of murder in the first degree and so state in
your verdict.   In that event, you have nothing to do with the
punishment, that is fixed by law."

It was ruled in State v. Walker, 98 Mo. 95, that it was not
necessary to use this word in defining murder.   Under our
laws, it is merely descriptive of the offense, and where, as in
this case, all the constitutive elements of the crime are fully
stated and the technical words defined, it is neither necessary
to use it in an instruction nor to define it if used.   [State v.
Scott, 109 Mo. 226; State v. Cantlin, 118 Mo. 100.]

VII.   As to the proposition that the court refused to in-
struct the jury that every member of the jury must concur in
the guilt of the defendant, and the degree of that guilt, we held
in State v. Young, 105 Mo. 640, that a refusal to so instruct
was not error because it was an unnecessary reflection on the
jury to say they were so ignorant as not to understand that
each juror must be convinced of defendant's guilt before they
could convict him.   [State v. Taylor, 134 Mo. loc. cit. 153.]

The third instruction asked by defendant to the effect that
"if the jury had a reasonable doubt as to whether the death of
Minnie Woods was caused by the cut and wound, they would
give defendant the benefit of the doubt," was also properly re-
fused.   "It is well-settled law in Missouri that the defendant
has no right to single out each material fact, and to have the
court direct the jury that if they have a reasonable doubt as to

the evidence of such fact they ought to acquit." [State v. Wells, 111 Mo. 536; State v. Schoenwald, 31 Mo. 147; State v. Christian, 66 Mo. 143.]

VIII. · The final contention 'that the evidence did not warrant a verdict of murder in the first degree, can not be sustained.

The evidence tends to show that defendant was jealous of the attention shown the deceased by one Tennell, and warned Tennell "to leave her alone." He then threatened to kill her, and when he was told he might get himself into the penitentiary, said "he didn't care, he felt jaily." An hour later he began to curse her, and followed that by knocking her down twice and kicking her, until he was pulled off. He then drew his knife and compelled Anthony, another negro man who endeavored to prevent his hurting her, to let him loose, and then assaulted the sister of the deceased, and ran her away and started for deceased who was in another room. He met her about the door, and notwithstanding Anthony's effort to hold him he stabbed her in the left breast and when he saw the blood spurt from the wound he fled and hid himself for several days. The evidence discloses that the deceased woman was wholly- unarmed, and that there was absolutely no provocation for the murderous assault of defendant. Here was evidence of deadly threats, ample time to deliberate, the use of a deadly weapon, premeditation and malice aforethought. We think the verdict was fully justified by the evidence before the jury, and as the case was fairly submitted to them under correct instructions, it is not our province to interfere with the conclusion they reached.

The judgment is affirmed and the sentence pronounced by the law must and will be carried into execution. All concur.