## THE STATE v. GRAVES, Appellant.

### Division Two, January 31, 1905.

1. **ROBBERY: Intent: Omission: Instruction.** Intent is an essential element of robbery, and must be properly submitted to the jury. And an instruction which fails to require the jury to find that defendant did rob, steal, take and carry away the money "with the intent to deprive the owner of it," is erroneous, and constitutes reversible error.

2. **———: ———: ———: Not Supplied By Other Instruction.** The omission of the essential element of intent, from an instruction which undertakes to tell the jury what they must find in order to convict defendant of robbery, is not supplied by the giving of another instruction which defines the term "robbery," but which does not embrace the elements of the offense necessary to authorize a conviction.

3. **———: Struggles Between Parties After Robbery: Instruction: Res Gestae.** The offense of robbery is completed by the taking of the money by violence. And while any struggles between the parties after the completion of the offense by the taking of the money, are competent evidence as part of the *res gestae*, indicating the intent with which the acts are done, yet they should not be considered as a part of the violence employed by the defendant in the commission of the offense. And an instruction which authorizes the jury to so consider them is improper.

Appeal from Greene Criminal Court.—*Hon. J. J. Gideon*, Judge.

REVERSED AND REMANDED.

*Delaney & Delaney* for appellant.

(1)   Instruction 4 is clearly misleading.   Under this instruction the jury could clearly infer, in fact it is the only inference justifiable, that a struggle for possession of the money after the asportation by defendant was complete, is sufficient evidence of violence to constitute robbery.   This is not the law.   State v. Sommers, 12 Mo. App. 374; State v. Willis, 16 Mo. App. 553; State v. Clark, 12 Mo. App. 593; State v. Cunningham, 13 Mo. App. 576.   (2)   Instruction 1 does not properly declare the law.   The intent with which defendant took the money is material and such intent is not submitted to the jury in instruction 1.   State v. O'Connor, 105 Mo. 121; State v. McLain, 159 Mo. 352; State v. Scott, 109 Mo. 266.   Nor is it cured by the instruction 3, as that is a mere definition of the term robbery and does not submit the question of intent.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

The instructions as to what should be found by the jury to constitute the crime charged were sufficient. State v. Manley, 107 Mo. 364; State v. Nolan, 111 Mo. 473.

FOX, J.—The defendant is charged with the crime of robbery.   The information was filed in the criminal court of Greene county at the July term, 1903, by the prosecuting attorney of said county.   On the twenty-eighth day of July, the defendant was arraigned and entered a plea of not guilty.   He was afterwards tried, found guilty by the jury, and his punishment assessed at six years' imprisonment in the penitentiary.   From judgment upon this verdict, he appeals.

The testimony for the State substantially shows that the prosecuting witness, William Rogers, had for

some years been a resident of the city of St. Louis. In the winter of 1903, he was out on the Frisco railroad in western Missouri and eastern Kansas. He had been working at the blacksmith trade at Hutchinson, Kansas, for some railroad contractors. Shortly before the robbery, he received a check from his employer for one hundred and fourteen dollars and fifty cents. This he had cashed at Red Fork and started at once for Springfield, Missouri. He arrived at Springfield in the morning of about the ninth of May, 1903. On arriving at Springfield, he got his breakfast, bought some clothes and went to the barber's shop. From there he went to a saloon and put in the balance of the day going from one saloon to another in Springfield. Sometime during the day, he ran across the defendant and they went together to a saloon kept by a man by the name of Harrington, the prosecuting witness spending his money freely on defendant and all others who chose to drink with him. They went from Harrington's saloon to Scharff's saloon about six o'clock in the evening. While there the defendant and a companion induced the prosecuting witness to go to the back part of the room, where defendant took hold of him, pushed him up against the wall, at the same time putting his hand in his pocket and taking money to the amount of between fifty and sixty dollars, the balance having been spent that day. After the defendant got hold of the money, he gave the prosecuting witness a shove and ran out of the door down the street and passed out of sight up an alley. He was afterwards arrested and complaint was filed, with the result heretofore stated.

Defendant admits that he was in the saloon with the prosecuting witness, but denies that he took the money. He admits that the prosecuting witness accused him of taking the money, but stated that he told the witness at the time that he did not have his money and that he could search him or have anybody else search him if he so desired.

Defendant's version of this transaction is substantially as follows, he says:

"I went to town in a wagon with my mother, arriving at ten o'clock. I met Rogers in the barber shop, and with him and the barbers went to saloon. Then I went to my aunt's and stayed several hours, and in the afternoon I met him again in Harrington's saloon. Then we went to Scharff's saloon. We did not drink in there. The first I knew he said, 'Give me that money.' I said, 'I ain't got your money; turn me loose;' and he grabbed hold of me and said, 'Here, give me the money,' and I said 'You can search me or anybody else in the room can search me.' I jerked loose and ran because we were both drunk and I thought we would be arrested. I had not taken any of his money and did not try to take any of his money. I went home and that night a neighbor boy called for me and we went fishing, and I was arrested on the creek."

There were other witnesses introduced whose testimony shows that the defendant and prosecuting witness were intoxicated, and some of them saw the defendant and prosecuting witness in the doorway of the saloon scuffling, Rogers remarking, "He has got my money," the defendant replying, "I have not got your money, you can search me." Other testimony was offered, indicating that the scuffling at the saloon was after the prosecuting witness claimed that the defendant had robbed him, and that the scuffle ensued by reason of Rogers insisting that defendant should not go home until he gave him his money. There was testimony by a policeman as to the bad reputation of defendant for honesty, truth and veracity. This is a sufficient indication of the nature and character of the testimony to enable us to determine the legal propositions presented by the record. At the close of the evidence the court instructed the jury, and it is only necessary to reproduce here those of which appellant

complains. They embrace Nos. 1, 3 and 4, which were as follows:

"1. Gentlemen of the jury, you are instructed that if you believe and find from the evidence that the defendant, Joe Graves, on the ninth day of May, A. D. 1903, or at any time within three years next before the filing of the information in this case, to-wit, the first day of July, A. D. 1903, at the county of Greene and State of Missouri, did then and there feloniously make an assault in and upon the body of William Rogers and seventy-five dollars in money, or any other amount of money, of the personal property of the said William Rogers, from the person and in the presence of the said William Rogers and against the will of the said William Rogers then and there by force and violence to the person of the said William Rogers feloniously did rob, steal, take and carry away, you will find the defendant guilty as charged in the information and assess his punishment at imprisonment in the penitentiary for any term of years that you may deem proper, but not less than five years.

"3. The term 'robbery,' as mentioned in these instructions, means the felonious taking of the money or property of another from his person in his presence and against his will, either by violence to his person or by putting him in fear of some immediate injury to his person with the intent to permanently deprive the owner of such money or property and without any honest claim to it.

"4. If you believe and find from the evidence that the defendant, Joe Graves, at the time and place mentioned in these instructions, took hold of William Rogers and forcibly took seventy-five dollars in money or any other amount of money from the pocket of the said William Rogers, that then and there a struggle took place for the possession of said money, and that the defendant took said money with intent to steal it,

then and there was such violence as to make such taking robbery in the first degree."

The cause was submitted to the jury upon the evidence and instructions of the court, and they returned a verdict of guilty, and assessed defendant's punishment at imprisonment in the penitentiary for the term of six years, and, as heretofore stated, this appeal was prosecuted to this court, and the cause is now before us for consideration.

OPINION.

The most serious proposition presented for consideration upon the record in this cause is the one in which the correctness of instruction numbered 1, given by the court upon the trial, is challenged.

It will be observed that instruction numbered 1 fails to require the jury to find that the defendant did rob, steal, take and carry away the money of the prosecuting witness *with the intent to deprive him of it.* The intent in robbery, as in larceny, is an essential element of the offense, and must be properly submitted to the jury. In State v. O'Connor, 105 Mo. l. c. 126, in criticising an instruction substantially the same as the one now under consideration, this court said:

"It has all the elements of robbery, except the felonious intent, which is omitted. To constitute robbery the property must be taken from the person, by force or putting in fear, against the will of the owner, with the intent to deprive the owner of it and without any honest claim to it on the part of the taker. In other words, the taking must be with intent to steal. This is elementary law. [Kelley's Crim. Law and Prac., sec. 582; Bish. C. L., sec. 1162a.] This element is wholly omitted from the instruction. This was error prejudicial to defendant in this case."

In State v. McLain, 159 Mo. l. c. 352, BURGESS, J., in commenting upon the O'Connor case, said:

"In that case, the instruction which was condemned simply told the jury that if the defendant assaulted William Franke, and by force and violence to the person of him, the said Franke, took from the person of him, the said Franke, against his will the watch named in the indictment, etc., they would find him guilty, regardless of the intent with which the offense was committed, and it was held to be erroneous. The only difference between the instruction passed upon in that case, and the instructions complained of in the case at bar, is in the use of the words willfully, feloniously and violently in this case, which is claimed by the State to be sufficient. But in order to constitute robbery, the property taken must be with intent to steal, or to deprive the owner thereof, and the words used in the instruction do not necessarily import such a taking."

If the announcement of the rule in these cases is longer to be followed, instruction numbered 1, as given in this case, must be condemned for failure to submit an essential element of the offense to the jury. This is simply the recognition of an old and well-settled principle in criminal law, and there is no good reason suggested why it should be departed from, and we are unwilling to do so.

It may be said that instruction numbered 3, which defines the offense of robbery, supplies the omission of instruction numbered 1. No. 3 proceeds by saying that "the term 'robbery,' as mentioned in these instructions, means," then properly defines the offense of robbery.

The term "robbery" is not used in instruction numbered 1, and even though it was it would still be insufficient to meet the difficulty presented in that instruction. No. 3 is only an abstract definition of the offense and embraces no requirement of the jury to find the essential elements of the offense, as defined.

Instruction numbered 1, which undertakes to tell

the jury what they must find in order to authorize a conviction, omits the essential element of the intent with which the acts were done.   Instruction numbered 3 simply defines the offense, but in no instruction is the question of intent submitted to the jury, nor is there any direction to the jury that the intent necessary to constitute the offense must exist before they can convict.

It may also be said that while it is true that instruction numbered 3 correctly defines the offense of robbery, and properly states the intent necessary to constitute the offense, still we are confronted with instruction numbered 1, which tells the jury that the finding of a state of facts, which does not embrace the essential element of intent, is sufficient to warrant a conviction.

Instruction numbered 4 is complained of, and it is insisted that it constitutes error.   This declaration is unhappily expressed.   It first tells the jury very properly what acts would constitute sufficient violence to make the taking ''robbery,'' then follows the objectionable part of the instruction, which would indicate that after the *violent taking* of the money had been accomplished, and the offense of robbery complete, the jury might consider the struggle between defendant and Rogers, as to the possession of the money, as a part of the violence used by the defendant in the commission of the offense.

The offense of robbery is complete when the last act is done, that of taking and obtaining possession of the money of the victim by violence.   While any struggles between the parties subsequent to the obtaining of the money are competent and relevant testimony as part of the *res gestae,* indicating the intent with which the acts are done, yet this violence, subsequent to the commission of the offense, should not be regarded as a part of the violence essential to the perpetration of the offense, that of taking the money of the person

sought to be robbed.  Doubtless the learned trial judge upon the retrial of this cause will relieve this instruction of this misleading feature, and will also instruct the jury as to larceny, if there is any testimony upon which to predicate it.

Complaint is made that the evidence in this cause failed to show any venue.  It is unnecessary to express an opinion upon that contention; it will suffice to say that upon the retrial of this cause the subject of venue should not be left in doubt.  If the prosecuting witness does not know the county in which he claims to have been robbed, certainly some witness can locate the county in which the saloon is situated, where the robbery is said to have occurred.

Other complaints are made respecting the improper cross-examination of defendant, but it is conceded that they were not properly preserved by timely objections or exceptions, hence they are not before us for review.

For the reasons herein indicated, the judgment is reversed and the cause remanded.

All concur.