STATE of Missouri, Respondent,

v.

Robert Emmett BURNS, Appellant.

No. 44497.

Supreme Court of Missouri.

Division No. 2.

June 13, 1955.

Morris A. Shenker, St. Louis, for appellant.

120

John M. Dalton, Atty. Gen., Winston Cook, Asst. Atty. Gen., for respondent.

BOHLING, Commissioner.

This is an appeal by Robert E. Burns from a judgment imposing a sentence of five years imprisonment for robbery in the first degree by means of a dangerous and deadly weapon. Sections 560.120, 560.135 RSMo 1949, V.A.M.S. He contends error occurred in unduly restricting his counsel's cross-examination of witnesses, in admitting certain testimony, in the argument of the State's attorney, in giving the State's main instruction, and in not instructing that the verdict of the jury must be unanimous.

Paul Blumenthal owned and operated a drugstore at 3201 Ivanhoe street, being the southwest corner of Ivanhoe and Scanlan streets, in the city of St. Louis, Missouri. The store is about 30 feet wide and extends about 60 feet back from the street. He operated a soda fountain about midway of the depth of the store, and a prescription department at the rear of the store. There was a cash register near the fountain and a safe in the prescription department.

About 7:15 p. m. February 3, 1953, two men with guns in their hands and masked with handkerchiefs over the lower part of their faces, entered the store, stated it was a holdup, and forced the customers over toward the cash register and then to the rear of the store.

The men did not wear hats. One had dark hair and wore a blue coat, a Navy pea jacket. The other had brown, light brown hair and wore a topcoat. Some of the witnesses described his coat as gray, light gray in color; others as gray or tan, gray-tan, between a gray and a tan.

The dark haired man went to the prescription department and had Blumenthal open the safe and get a box containing money from a drawer in the prescription department. In the course of the robbery he shoved the gun in Blumenthal's ribs, told Blumenthal to be "damned quick," and "Now, I want all of it." The other robber ordered Russell Feldman, a high school student and part-time clerk in the drugstore, to open the cash register. Feldman had trouble opening the register. Katherine Ribaudo, a customer in the store, upon hearing the robber talking loud to Feldman, looked in that direction and while she was looking the handkerchief slipped down from the robber's face. After about a minute she turned her face to the wall again. Feldman, upon being told, went back to the prescription department and, after that, the robber in the front of the store took the money out of the register.

August Pouse operated a filling station at the northwest corner of the intersection. He noticed three men loitering near the drugstore entrance that evening. He looked away and a short time later only two of the men remained. They were 45 to 50 feet from him and he could readily see them by the street lights and the lights of the drugstore. They were without hats and unmasked. The man with the topcoat was facing him and he saw his face for a total of about four or five minutes; but the man with the Navy pea jacket was keeping his back to the filling station. He observed them off and on for about ten minutes. He did not see one of the men enter the drugstore but saw the man with the topcoat enter with long strides. While the two men were in the drugstore a dark colored automobile drove up in front and waited with the engine running. The two men came out, got in the automobile, and it was driven east on Scanlan at a fast speed.

The robbers were in the drugstore five minutes or more. They took about $700 in currency.

On separate occasions during the first part of April, 1953, Russell Feldman, Katherine Ribaudo and August Pouse identified the defendant at a police station "show up" room as the robber wearing the topcoat, as they also did at the trial.

The defendant offered no witness.

For his first point defendant states, in general terms, that "the court erred in

its continuous restriction of defendant's cross-examination of State's witnesses," depriving defendant of his constitutional right, Art. I, § 18(a), V.A.M.S.Const., of confrontation and cross-examination of witnesses appearing against him. Consult Rule 1.08(a) (3) 42 V.A.M.S. Defendant's argument refers to seven instances during the progress of the trial wherein objections were sustained to questions asked the State's witnesses. The State does not question the general rule thus presented; but contends that defendant's right of cross-examination was not improperly restricted by the court and points out that neither in defendant's point nor in his argument does he develop that the questions asked were proper or that he was prejudiced by the court's action. These essential prerequisites to reversible error are apparently assumed to have occurred by defendant.

Examining each of the instances referred to in defendant's argument and ruling defendant's point in general terms, we fail to find that the court continuously or unduly restricted defendant's cross-examination. Illustrative of the incidents mentioned in defendant's argument are:

Witness Pouse identified defendant as the robber with the lighter hair and a topcoat. He testified during the course of his cross-examination that this man was about 5 feet 10 or 11 inches tall; and that his, witness's, height was 6 feet 1½ inches. The court sustained an objection to the next question, whether said man "was slightly less in height than you," stating: "It's a matter for the jury, they have heard the figures."

Geneva Strickland, a customer in the store, testified on direct and on cross-examination that defendant's topcoat "was between a gray and tan; it was one of the lighter shades; I couldn't tell you exactly the shade of it." Then followed: "Q. But you can't say then whether it was a tan topcoat or a gray topcoat, is that true?" The court, upon objection, stated the witness had theretofore answered the question but he would permit her to describe the coat again. The witness again described the coat as before, stating "I couldn't tell you the exact color."

As stated, the robbery occurred February 3, 1953, and the State's witnesses identified defendant at the police station the first part of April, 1953. Katherine Ribaudo, a customer in the store, testified the robbery occurred on April 3rd, stating "I don't remember distinctly. I am almost sure it's April 3rd." Witness was next asked: "Q. You remember distinctly it was April 3rd." An objection that the question misquoted the witness was sustained. She had just testified she did not distinctly remember the date.

A reading of the transcript discloses that the court permitted defendant's counsel, as stated in defendant's brief, to "vigorously cross-examine" the State's witnesses. Some of the fact issues involved in the instances mentioned in defendant's argument were of such trivial or minor importance as not to affect the results. It appears from the record that defendant received in the instances mentioned in his argument the benefit of the witness's information on the fact involved. No substantial right of cross-examination was denied defendant and defendant has not established prejudicial error. 24 C.J.S., Criminal Law, § 1914, a(2), and c, page 931; § 1948, b, (2) (d), page 1103.

State's witness Guy Livingston, a member of the police force, first testified concerning the arrest of defendant and was then asked:

"Q. Did you do anything else outside of assisting in the arrest in this case, Officer? A. I was present on two identifications.

"Q. You referred to these two identifications. When was the first one you referred to?

"Mr. Doberstein: Just a minute. I am going to object to the remark by counsel, ask it be stricken and counsel admonished; it's a violation of the constitutional rights of this defendant, if the court please; it's a conclusion.

"The Court: I am going to overrule the objection, Mr. Doberstein, in view

of the previous answer made by the witness, to which there was no objection.

"Mr. Doberstein: I will object to the previous answer and ask that that be stricken on the same grounds."

This was overruled by the court, the court stating the answer was clear and distinct and the objection was too late.

■ Counsel first objected to the remarks of the State's attorney: "You refer to these two identifications." The witness's answer was clear, and the court's ruling that defendant's objection thereto and motion to strike were not timely may be sustained by the record. State v. Sinovich, 329 Mo. 909, 46 S.W.2d 877, 880 [10]; State v. Gaines, Mo., 261 S.W.2d 119, 126 [12]; 23 C.J.S., Criminal Law, §§ 1060, 1071, 1078, page 473. Furthermore, prior to witness Livingston taking the stand, witnesses who were at the scene of the robbery were examined and cross-examined respecting their identification of defendant after his arrest in a "show up" room. In the circumstances the witness's answer that he was present at two identifications did not add to the State's case, was not prejudicial and did not constitute reversible error. State v. Gaines, supra; State v. Pollnow, Mo., 14 S.W.2d 574, 575 [3]; State v. Johnson, Mo., 252 S.W. 623, 625 [7].

Defendant questions the propriety of the State's main instruction in three respects.

■ So far as material here, a robbery, although a single offense, may be committed in two ways; i. e., by the felonious taking of the victim's personal property (1) by violence to his person, or (2) by putting him in fear of some immediate injury to his person. Section 560.120 RSMo 1949, V.A.M.S. The State's main instruction submitted both alternatives in the conjunctive. Defendant says there was no substantial evidence of violence and error was committed in submitting robbery by violence. Defendant may not successfully urge this point as under the instruction the jury was required to find that the robbery was accomplished by putting the victim in fear of some immediate injury to his person, which finding is sufficient to support a conviction and was supported by evidence not questioned. The instruction was more favorable to defendant than the law required. State v. Bater, Mo., 232 S.W. 1012, 1014 [4]; State v. Reinke, Mo., 147 S.W.2d 464 [1, 2]. In the course of the robbery defendant's companion shoved a gun in the victim's ribs and said, "Now, I want all of it," forcing him to deliver over his property. The slightest touching of another in anger has been considered a battery, State v. White, 52 Mo.App. 285, 289; and with respect to the element of force and violence consult State v. Davis, Mo., 58 S.W.2d 305, 308 [6]; State v. Graves, 185 Mo. 713, 715, 717, 720, 84 S.W. 904, 906.

■ The instruction consisted of several paragraphs, one of which was to the effect that all persons are equally guilty who act together with a common purpose in the commission of a crime and the act of one of them, acting jointly, is the act of each. Defendant asserts that this constituted an abstract statement and the jury was not required to find that defendant did act together with others in a common intent in the commission of the robbery. We do not agree. The next paragraph of the instruction, so far as material, predicated a verdict of guilty upon a finding that "the defendant, either acting alone or jointly with another or others" committed the robbery. Defendant and his companion were principals and the act of one was the act of the other. State v. Dowling, 360 Mo. 746, 230 S.W.2d 691, 694 [6]; State v. Davis, supra, and cases cited; 23 C.J.S., Criminal Law, § 1287, Conspiracy, page 861.

■ The instruction required, among others, a finding that the taking of the victim's property was "with the felonious intent at the time to wrongfully take and carry away and convert the same, or any part thereof, fraudulently to his or their own use, and permanently deprive the owner or owners thereof * * *." Defendant argues that the phrase "or their own use" authorized a conviction if the jury found de-

fendant took the property for the use of other persons participating in the robbery, whereas, as we understand defendant's position, a conviction under § 560.120 is not authorized unless the conversion be to defendant's own use. Defendant misconstrues the instruction. The pronouns "his" and "their" in the quoted clause refer to the person or persons, the robber or robbers in this instance, previously mentioned in the instruction; to wit: "his" referring to defendant acting alone; and "their" referring to defendant acting jointly with another or others. In either event the conversion would be one in which defendant was a participant. Defendant's attacks upon the instruction are overruled.

■ The court did not instruct the jury in writing that any verdict must be agreed to by all of the jurors, and defendant contends the verdict may not have been concurred in by all members of the jury. In State v. Garth, 164 Mo. 553, 565(VII), 65 S.W. 275, 277(7), a death case, the court said on the instant issue: "As to the proposition that the court erred in refusing to instruct the jury that every member of the jury must concur in the guilt of the defendant, and the degree of that guilt, we held in State v. Young, 105 Mo. [634] 640, 16 S.W. 408 [409], that a refusal to so instruct was not error because it was an unnecessary reflection on the jury to say they were so ignorant as not to understand that each juror must be convinced of defendant's guilt, before they could convict him." State v. Taylor, 134 Mo. 109, 153, 35 S.W. 92, 102; State v. Brown, 360 Mo. 104, 227 S.W.2d 646, 654 [21]. An instruction of this nature causes no harm and is generally given. The usual instructions on reasonable doubt, presumption of innocence et cetera were given. Under the authorities mentioned the point is not well taken. Consult 23 C.J.S., Criminal Law, § 1295, page 875. In the instant case defendant did not object to the court's failure to give the instruction or make a request that one be given or that the jury be polled.

As shown in the statement of facts the witnesses differed in their descriptions of the topcoat worn by defendant at the robbery. In discussing witness Pouse's description of the defendant's topcoat, the State's attorney, in argument, stated: "He did not say he saw a gray coat with small black dots in it; he stated that's what he saw at the police station, but gentlemen, if you recall what he said, he testified he could not see those black dots at the scene." Defendant's counsel objected, stating that State's counsel was stepping out of the record. Witness Pouse testified that when he saw defendant at the police station in April, 1953, defendant had on the same coat he wore at the robbery. His description of the coat as of February 3rd was "light gray; kind of speckled, sort of light gray." On cross-examination his description of defendant's topcoat at the police station was: "It was a gray coat with real small dark spots in it." The spots were "practically black," "very small." "The coat as a whole looked gray." "I would class it as light gray." Asked if he could see the small dark spots at the robbery, he stated: "You couldn't tell definitely that they were black spots but you could tell that they were just a shade apart"; that you could notice "it wasn't a plain gray coat." The court correctly overruled defendant's objection. The State's argument was within the record.

We find no reversible error of record proper.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.