STATE of Missouri, Respondent,

v.

Joseph Edward REEDER, Appellant.

No. 51311.

Supreme Court of Missouri,

Division No. 1.

Oct. 11, 1965.

Norman H. Anderson, Atty. Gen., Donald L. Randolph, Asst. Atty. Gen., Jefferson City, James D. Anderson, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Emil J. Kohl, St. Louis, for appellant.

HOUSER, Commissioner.

Joseph Edward Reeder, convicted of first degree robbery by means of a dangerous and deadly weapon, § 560.120, V.A.M.S., and of four previous felonies under § 556.280, V.A.M.S., and sentenced to 15 years in the penitentiary, has appealed from the judgment of conviction.

The state's evidence indicated that after an evening of drinking and dancing at a tavern, the prosecuting witness Lehnhoff, defendant Reeder, codefendant Bobby McGaha, Reeder's girl friend and another woman and baby started to leave the tavern, about 1:30 or 2 a.m. It was raining, so Lehnhoff offered to drive them in his car, which was nearby the tavern door, to their car, which was on a parking lot at the end of the block. When they arrived at the parking lot McGaha got out of the car, pulled a gun on Lehnhoff, told him to get out of his car, and to stand still and not move or that McGaha would shoot. While McGaha held the gun on Lehnhoff, Reeder removed Lehnhoff's wallet, took $34 from the wallet, stuffed the empty wallet back in Lehnhoff's shirt pocket, and then reached around in back of Lehnhoff and got the silver change (about $1.50) out of Lehnhoff's right pants pocket. McGaha was holding the gun on Lehnhoff during the entire time. One of them ordered Lehnhoff to leave, so he got in his car and drove away. These events occurred at Broadway and Madison Street in the City of St. Louis. At a police station he reported the robbery. A detective later showed Lehnhoff a picture of Reeder, which he identified as one of the robbers. Thereafter Lehnhoff picked Reeder and McGaha out of a police lineup, positively identifying them as the participants in the robbery.

Appellant's first point is that the court erred in overruling his motion for new trial because the verdict was the result of bias and prejudice upon the part of the jury. Detective Monahan had testified that it was raining on May 30, 1964 between 10:30 and 11 o'clock p. m. when he saw McGaha at the tavern. Policeman Finnegan had testified that at about 11 o'clock p. m. when he saw McGaha at the tavern it was raining hard enough to require the use of wind-

shield wipers. Lehnhoff had testified that it was raining when he left the tavern at about 1 o'clock a. m. on May 31, 1964. For the purpose of impeaching these three state's witnesses appellant introduced into evidence Exhibit No. 1, a certified copy of the Local Climatological Data of the U. S. Department of Commerce, Weather Bureau, which listed zero precipitation for the dates of May 30 and 31, 1964. Juror No. 7 inquired where these readings were taken, and the court suggested that they were taken at the Customs House (12th and Market, downtown St. Louis) and at Lambert Field (in St. Louis County). The assistant circuit attorney disputed this, claiming they were taken at Lambert Field. Counsel for defendant opined that the readings were taken at 12th and Market. Whereupon Juror No. 7 interjected: "But it could be raining across—." He was interrupted by counsel, who said he could show that the reading was made only at Lambert Field. Juror No. 2 asked to make an inquiry and the court permitted him to ask whether there could have been a local shower in that area that would not be recorded in the weather bureau record. One of the attorneys offered to answer but the court refused to permit the lawyers to testify. In rebuttal the state offered Exhibit A, to impeach defendant's Exhibit 1. The court admitted in evidence Exhibit A, which was a statement issued by the weather bureau of the U. S. Department of Commerce, St. Louis station, on December 2, 1964, as follows: "I hereby certify that records of the U. S. Weather Bureau at our official station at Lambert Field, Hazelwood, Missouri, indicate that no precipitation fell at Lambert Field on May 30th, or May 31st, 1964. This applies solely to our official station at Lambert Field, and does not apply to other locations in the metropolitan area. Our radar for the period May 30th and 31st, 1964, indicates that showers were present around the metropolitan area during the evening of May 30th and the early morning hours of the 31st."

Later the state brought a meteorologist to the stand. He testified that Exhibit 1 is a record of weather conditions at the two specific points only; that the bureau's radar reports showed areas of rainfall surrounding the St. Louis area on the night of the 30th and morning of the 31st of May, 1964, and that in his opinion it is very likely that some form of rain did occur within and around the St. Louis area that night, or in the early hours the next morning.

Appellant claims that Juror No. 7 demonstrated his partiality to the state's case by "rejecting" the weather bureau's report that no rain had fallen on the night in question, and that his bias would influence the judgment of the other jurors before they had a chance to hear all of the evidence. It is argued that Juror No. 7 demonstrated that he would not accept evidence favorable to the defendant. Appellant cites State v. Wheeler, 108 Mo. 658, 18 S.W. 924, in which a juror, after being sworn but before any evidence was introduced, used brutal language to the defendant, thereby exhibiting prejudice. The court's action in overruling a challenge to the juror's right to sit in judgment was held ground for a new trial. The case is not comparable because the action of the juror clearly indicated bias and prejudice and the point was properly preserved.

In the case before us the point was first raised in the motion for new trial. Where misconduct of jurors is first presented at that stage an affirmative showing must be made that defendant and his counsel were ignorant of the fact until after the trial. State v. McGee, 336 Mo. 1082, 83 S.W.2d 98. In his motion for new trial defendant alleged that this was concealed from defendant and his counsel. In his brief appellant urges that the full import and force of the juror's words were not brought fully to the attention of appellant until the transcript was completed. These unverified statements do not prove themselves and do not constitute an affirmative showing of the concealment.

■ If the point had been timely and properly raised it would nevertheless not merit a new trial. The nature of the statement and question was not such as to exhibit bias or prejudice. It cannot fairly be said that either of the jurors demonstrated a rejection of or refusal to accept defendant's evidence on the issue. Instead of showing a closed mind on the subject the statement of Juror No. 7 and the query of Juror No. 2 demonstrate an understandable reaction to the evidence first introduced and a desire to be further and more fully informed. Nothing more is shown than a lively and active interest by the jurors in the issue of "rain or no rain" and an attempt to clarify the question in their minds. The state introduced clarifying evidence which, judging from the fact that the jurors asked no further questions, apparently satisfied their curiosity. There is no error in this connection.

Next it is claimed that the state erred in giving main verdict-directing Instruction No. 1 for the reason that it "required the jury to find facts in excess of those required by the statute and the State failed to prove facts sufficient to warrant a conviction in the light of the instructions given." The argument is that § 560.120, V.A.M.S. interdicts the felonious taking of the property of another by violence to his person *or* by putting him in fear of some immediate injury to his person, whereas No. 1 requires a finding of violence to his person and by putting him in fear. The instruction required a finding that defendant "did feloniously assault one Norman Lehnhoff, with a dangerous and deadly weapon, in the form of an automatic pistol, and that by putting said Norman Lehnhoff in fear of immediate injury to his person * * * ." It is said that No. 1 is clearly contrary to § 560.120, which provides that first degree robbery may be committed by feloniously taking the property of another from his person, or in his presence and against his will, "by violence to his person, or by putting him in fear of some immediate injury to his person."

■ The crime of robbery in the first degree may be committed by either of the two ways indicated (by violence to the person or by putting the person in fear of some immediate bodily harm), State v. Burns, Mo.Sup., 280 S.W.2d 119, 122 [3], or by both. It is not necessary that there be proof of both of the ways alleged, but only that there be proof of at least one. State v. Thompson, Mo.Sup., 299 S.W.2d 468. Where there is substantial evidence of the one but not of the other and both alternatives are submitted in the conjunctive there is no error, because in that case the instruction is more favorable to the defendant than the law requires. State v. Burns, supra, 280 S.W.2d, 1. c. 122 [3]. In this case, however, there was evidence to support both. There was evidence that there was violence to the person—a felonious assault, by the act of defendant in removing the victim's wallet from his person at the point of the gun held by the accomplice with whom defendant was jointly acting, and in stuffing the empty wallet back in the victim's shirt pocket after extracting the money, and by reaching into the victim's pants pocket and removing the silver coins.

Citing State v. Ray, Mo.Sup., 354 S.W.2d 840, appellant claims that the evidence does not show violence to the person. In that case defendant pointed a gun at the attendant at the check-out station at a grocery store and demanded that she open the cash register. She opened the register and defendant took money therefrom and fled. The statement in the opinion " * * * the evidence did not show that the robbery was accomplished by violence * * * " is seized upon by appellant to support his contention that there was no violence to the person in this case. The suggested conclusion does not follow because here there was a touching of the person of the victim, a factor absent in Ray. The slightest touching of another in anger, or by shoving a gun into the ribs of the victim of a robbery, is a battery. State v. Burns, supra. Defendant's act of removing Lehnhoff's wallet from his pock-

et, stuffing it back into his shirt pocket, and reaching into his pants pocket for the silver constituted a touching, a battery, an act of violence to the person.

There was also evidence of putting the victim in fear of some immediate injury to his person. McGaha, with whom this robbery was jointly committed and for whose acts defendant is equally responsible, reached into his boot, removed therefrom an automatic pistol, ordered defendant to get out of his car, and said "I've got a gun, hold still or I'm going to shoot." Lehnhoff complied with his order to get out of the car. The two men then told the victim to "stand there by the car, don't move, stand right there * * *." Lehnhoff complied with their directions. One of them said "Hold still." Lehnhoff held still and submitted to the taking of the wallet and silver from his person. Appellant claims that there is no evidence that Lehnhoff was put in fear; that there was no expression of emotions as in State v. Ray, supra, (the victim said she was "pretty startled"), and in State v. Parker, Mo.Sup., 324 S.W.2d 717 (the victim said "I was scared—I was scared to death"), and no statement from which it could be inferred that Lehnhoff was in fear or from which his state of mind or emotional state could be ascertained. This claim must be rejected. The fact that Lehnhoff got out of the car, stood still, did not move, and did not resist but submitted to the robbery under the influence of the pistol, is substantial evidence that he feared the consequences of his failure to do so. Testimony from the victim characterizing his mental or emotional state or descriptive of his state of mind is not essential where there is evidence of compliance and submission under the duress and coercion inherent in the situation where a robber points a gun at a person in the commission of a robbery. "The fact that [Mrs. Meyer] complied with defendant's demand that she open the cash register would indicate that she feared the consequences of her failure to do so. It is contrary to the universal experience of all mankind to say that a person

would experience no fear when confronted with a gun in the hands of a robber. It is a familiar axiom that 'actions speak louder than words.' We do not think Mrs. Meyer would have opened the register and permitted the defendant to take the money therefrom had she not been motivated by fear." State v. Ray, supra, 354 S.W.2d. l. c. 843.

The proof of one alternative being sufficient, the existence of substantial evidence of both alternatives (violence to the person and fear of immediate injury to the person) certainly validates Instruction No. 1.

Appellant's last point is that the court erred in overruling his motion for acquittal at the close of the state's case for the reason that "there is no competent and substantial evidence on the whole record to show that the Appellant took the money mentioned in the evidence." The argument is that since this robbery took place in a poorly lighted place, and since Lehnhoff was facing McGaha and looking at McGaha continuously most of the time, and since there was no testimony that Lehnhoff saw Reeder or looked at Reeder or looked in his direction and recognized him as Reeder, or recognized Reeder's voice, it follows that Lehnhoff's testimony that Reeder took money from his pocket is a conclusion, and there is a failure of proof that Reeder was involved, and therefore this verdict is based upon conjecture, surmise and conclusions.

The record does not support this argument. Lehnhoff testified that Reeder was present while McGaha produced the pistol, told Lehnhoff to get out of the car, and was present while he was getting out of the car; that "Reeder said 'hold still' and he reached in my pocket, my back pocket, got my wallet out, took the money out of my wallet, * * * stucked it in my shirt pocket like this (indicating)." In answer to the question "Which one did this?" he answered "Reeder. * * * That's right, and then he reached around, while he was standing, he reached around in back

**360**

of me and got my—this right pants pocket here, got the silver out of my pants pocket, I had a dollar and a half, two dollars maybe, I'm not sure just how much, I had a little silver in my pocket, and he got that." The following excerpts are from the transcript: "Q Was Reeder standing there with him [referring to McGaha]? A That's right. Q And Reeder was the one that went in your pocket and took your billfold? A That's right. * * * Q Now, you say that the man you describe as Reeder got out the right side of the car, is that correct? A Yes. * * * He was going around in back of the car, in back of my car while McGaha was telling me to get out. * * * Q Now, when this man that you say was Joe Reeder approached you, from what direction did he approach you? A From my left. Q And what did he do then? A He got in my pocket, said, 'hold still.' He got in my pocket, got out my wallet, took my money out of it and stuck it in my shirt pocket, stuffed the wallet in my shirt pocket. * * * He * * * reached around behind me and got behind me and reached in my pocket, in my right hand pocket and got the silver out of my right hand pants pocket. * * * [T]hey told me to get in the car and leave, which I did." The foregoing, together with the fact that Reeder was the only other man present; the evidence that there was an ordinary street light on the corner, and light from Lehnhoff's automobile—his headlights were on and were shining against a building; that Lehnhoff saw and identified McGaha, the make, model and color of the waiting automobile and could describe the color and size of the automatic pistol, and the fact that the jury could infer that Lehnhoff could recognize Reeder's voice (having been associating with him for several hours immediately prior thereto), constitute substantial direct and circumstantial evidence that Reeder took the money and that Lehnhoff could have seen and did see Reeder do what he said he did, and supports the conviction as against the

contention that the testimony implicating Reeder constituted a conclusion.

Under Criminal Rule 28.02, V.A.M.R. we have reviewed the information, verdict, judgment and sentence on the record before us and we find them proper in form and substance.

The judgment is affirmed.

WELBORN, and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.