## Jess Walling v. The State.

### No. 4393. Decided February 10, 1909.

#### 1.—Robbery—Charge of Court—Fraudulent Intent—Reasonable Doubt.

Where upon trial for robbery the court charged the jury that the alleged stolen property must have been taken with a fraudulent intent on part of the defendant to deprive the owner of the value thereof and to appropriate the same to the use and benefit of defendant, and that that fact must appear from the evidence beyond a reasonable doubt, there was no merit in the contention that the court had not so instructed the jury; especially when the charge of the court is considered as a whole.

#### 2.—Same—Motion for New Trial—Affidavit.

Where the affidavit to the motion for new trial did not show that the prosecuting witness stated any fact at variance with his testimony on the witness stand, but merely related the opinion of the witness, the same was insufficient to entitle defendant to a new trial.

#### 3.—Same—Evidence—Res Gestae.

Where upon trial for robbery the testimony showed that a very short time after defendant and the prosecuting witness had left the witnesses, the prosecuting witness returned in a state of great agitation, and stated that he had been robbed, etc., the same was res gestae and admissible.

Appeal from the District Court of Navarro. Tried below before the Hon. L. B. Cobb.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Lewis T. Carpenter,* for appellant.—On question of fraudulent intent: State v. Bateman, 95 S. W. Rep., 413; State v. Groves, 84 S. W. Rep., 904; State v. Spray, 74 S. W. Rep., 846.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Navarro County on a charge of robbery. On the 15th day of April, 1908, he was put upon trial, convicted by the jury and his

punishment assessed at confinement in the penitentiary for a period of five years.

The principal witness, George Ahearn, testified that he met appellant on the 14th of December, 1907, at about 6 o'clock in the afternoon, and that they took several drinks together; that he ate his supper that night at the opera house cafe, about 9:30 p. m. and just after this he went with appellant to a saloon named where he took a drink; that when he paid for the drink he showed his money, when appellant asked him for a $5 bill, which he refused to let him have. That they went to one or two other saloons and took drinks together, and then one or the other of them proposed to go to a house or some houses of ill-fame; that they started to visit these places and crossed the railroad into East Corsicana and came up near the S. W. corner of the compress platform. The facts, as to the alleged robbery, are thus described by the witness: "He grabbed me by the collar of my overcoat and took me by the throat and choken me down and took what I had; he had me down holding me with his hands; he took silver and a pocket-book, and when I got up he took my overcoat. He made me think my life was in danger and I would not have let him have the things but for that; he got one $10 bill, five $5 bills and $20 in silver—all the money I had; and also got my watch. One $5 bill was torn; my purse was hand-made and had a lion's head on it and also my initials. The watch was worth $45 and the overcoat $15. All the above property was taken from me without my consent." The purse which was found in the possession of appellant and shown the witness by the officers of Navarro County, was identified by Ahearn as the one taken from him by appellant. The evidence further shows that these parties, appellant and Ahearn, were in the various saloons named by Ahearn and that soon after he had left the opera house bar, Ahearn came rushing into the house and out of breath without his overcoat, and asked where he could get an officer, and said that the man who had gone out with him had robbed him. The testimony offered by appellant related to the fact that there had been paid him different sums of money a short time before the alleged robbery, and also that Mrs. Walling (his wife) had in her possession some money which she had put in his overcoat pocket. Mrs. Walling testified that her husband came home that night between 10 and 11 o'clock; that she heard him talking out on the gallery steps, and that when she went out he was lying on the steps drunk.

1. The first proposition on which a reversal is sought involves the correctness of the court's charge. The court charged the jury, among other things, as follows: "If you believe from the evidence beyond a reasonable doubt that in Navarro County, Texas, on or about December 14, 1907, the defendant unlawfully assaulted one George Ahearn and by means of such assault and violence committed upon him, took from his person a watch of the value of forty dol-

lars, one overcoat of the value of ten dollars, about twelve dollars in silver coin money of the value of twelve dollars, one ten-dollar bill of the value of ten dollars, five five-dollar bills of the value of five dollars each, all said coins being current money of the United States of America, or any of said property or money, and that said property belonged to said George Ahearn, and that such money and property or any of it was taken with the fraudulent intent on defendants part to deprive said Ahearn of the value thereof and to appropriate the same to the use or benefit of his, the defendant' you will find him guilty as charged and assess his punishment at confinement in the penitentiary for life or for any term of years not less than five. If you are not satisfied by the evidence beyond reasonable doubt that defendant did take from the person of Ahearn all or some of the property or money above mentioned, and that the same, if taken, was taken by assault and violence, you will acquit."

It is complained that the last paragraph of the charge quoted above is incorrect, and the error substantial and reversible for the reason that it does not instruct the jury to acquit the defendant unless they believe from the evidence beyond a reasonable doubt that the property taken was taken with the intent to appropriate it to the use and benefit of the defendant. We think that construing the two paragraphs of the court's charge, above quoted, it is clear that there is no substantial merit in this contention. By the first paragraph of the court's charge, the jury were in terms required to believe that the property "was taken with the fraudulent intent on defendant's part to deprive said Ahearn of the value thereof and to appropriate the same to the use or benefit of him, the defendant,"· and that this fact must appear to them beyond a reasonable doubt. It is elementary and well settled that in construing charges as other instruments, that the language be given a fair and reasonable interpretation and construction, and that the whole charge must be taken together. We have not been referred to any case in this State sustaining appellant's contention, but reliance is chiefly had upon certain decisions by the Supreme Court of Missouri. These cases we have carefully examined, and they do not, as we believe, sustain appellants contention as applied to the facts in this case. The case cited by appellant most nearly in point is the case of the State v. Graves, 84 S. W. Rep., 904. That was a case of robbery, as is this. The charges discussed in that case are referred to as Nos. 1 and 3. Charge No. 1 was as follows: "Gentlemen of the jury: You are instructed that if you believe and find from the evidence that the defendant, Joe Graves, on the 9th day of May, A. D. 1903, or at any time within three years next before the filing of the information in this case, to wit: the 1st day of July, A. D. 1903, at the county of Greene and State of Missouri, did then and there feloniously make an ·assault in and upon the body of William

Rogers, and seventy-five dollars in money, or any other amount of money, of the personal property of the said William Rogers, from the person and in the · presence of the said William Rogers, and against the will of the said William Rogers feloniously did rob, steal, take and carry away, you will find the defendant guilty as charged in the information, and assess his punishment at imprisonment in the penitentiary for any term of years that you may deem proper, but not less than five years." Charge No. 3 was as follows: "The term 'robbery,' as mentioned in these instructions, means the felonious taking of the money or property of another from his person in his presence, and against his will, either by violence to his person, or by putting him in fear of some immediate injury to his person, with the intent to permanently deprive the owner of such money or property, and without any honest claim to it." It will be thus noted that the charge of the court, No. 1, where the court undertook to apply the law to the facts, the jury were not required to find, as in this case, that the property was taken with the intent to deprive the' owner of same and to appropriate it to his own use and benefit, but this essential element of robbery was omitted. It was held, substantially, in that case that this necessary issue of fact required to be submitted to the jury, was not supplied because in the charge No. 3, defining the offense of robbery it was named as among the essential ingredients of that crime. Discussing the matter, Judge Fox, speaking for the court, says: "It may be said that instruction No. 3, which defines the offense of robbery, supplies the omission of instruction No. 1. No. 3 proceeds by saying that "the term 'robbery,' as mentioned in these instructions means," and then properly defines the offense of robbery. The term 'robbery' is not used in instruction No. 1; and, even though it were, it would still be insufficient to meet the difficulty presented in instruction No. 1. No. 3 is only an abstract definition of the offense, and embraces no requirement of the jury to find the essential elements of the offense as defined. Instruction No. 1, which undertakes to tell the jury what they must find in order to authorize a conviction, omits the essential element of the intent with which the acts were done. Instruction No. 3 simply defines the offense, but in no instruction is the question of intent submitted to the jury, nor is there any direction to the jury that the intent necessary to constitute the offense must exist before they can convict." The case is easily distinguishable from the case at bar where the jury are in terms instructed that they must find, beyond a reasonable doubt, every essential element and ingredient of the offense charged.

2. Appellant in his motion for new trial strongly urged that the verdict and judgment of conviction should be set aside because of certain facts therein stated. This ground of the motion rests upon

the affidavit of Mrs. Eva Shellito, of Dallas, and Mrs. Maud Walling. This affidavit is as follows: "That they are acquainted with one George Ahearn, of Dallas County, Texas, the prosecuting witness in the case of the State of Texas v. Jess Walling, recently tried in the District Court of Navarro County, Texas, and that on or about the 26th day of May, A. D. 1908, they met and conversed with the said Ahearn in the city of Dallas, Dallas County, Texas, and that the said Ahearn stated to each of them that he did not believe that the defendant, ever had any intention of robbing him down at the compress or near the compress in the city of Corsicana, Navarro County, Texas, and that he did not believe that at any time or at any place the defendant had any such intention. Affiants, and each of them, further states upon oath that the said Ahearn told them and each of them that if the defendant had paid to him the money which he had paid to the lawyers in Corsicana that the defendant would never have been convicted."

Contesting this ground of the motion, the State filed an affidavit by Ahearn in which he unqualifiedly denies making any of the statements attributed to him. In any event the affidavit relied upon by appellant is insufficient to require the court to grant a new trial. It does not purport or claim that Ahearn stated any fact at variance with his testimony on the witness stand. It merely relates to certain opinions of his which in no event would have been admitted in evidence.

3. Complaint is made again as to the admission of the testimony of Leo Fox and W. Z. Herman as to statements and declarations made by Ahearn to them on the night of the robbery, to the effect that he had been robbed by appellant. The testimony of both of these witnesses shows that a very short time after appellant and Ahearn had left the opera house saloon he, Ahearn, returned in a state of great agitation without his overcoat and in an excited way stated that he had been robbed by appellant. We think this testimony is clearly res gestae.

4. From a careful review of the record we are convinced that there was no error committed on the trial of the case and that we are compelled by a due observance of the rules governing us to affirm the judgment of conviction which we here do.

*Affirmed.*

[Rehearing Denied March 17, 1909.—Reporter.]