## THE STATE v. CLAUD EMMONS, Appellant.

### Division Two, December 1, 1920.

1. **CROSS-EXAMINATION: Wide Latitude: Interest.** It is difficult to lay down a hard-and-fast rule concerning the proper scope of cross-examination. A wide range is allowed for the purpose of showing motive, interest or animus of the witness. Where defendant was charged with robbing a bank at Neelyville on June 13th, and his mother had testified that he was at her home in Arkansas the entire day the robbery occurred and left there two

days later for St. Louis, it was not error to permit the State to show on cross-examination that four days after the robbery she wrote him (then in St. Louis) under an assumed name, in which she said: "I met Gosharn when I went to Moark and he was asking about Claud (her son) and I told him he had went to the Kansas wheat fields." The letter reveals a clever device by the mother to aid the flight of her son, throws light upon her interest, was admissible on the question of her interest in protecting defendant, and being admissible for that purpose whether admissible for other purposes is immaterial.

2. **INSTRUCTION: On Circumstantial Evidence.** Where there is both direct and circumstantial evidence of defendant's guilt, it is not error to give an instruction on circumstantial evidence, although it would not be error to refuse such an instruction.

3. ————: **Putting in Fear: Three Charged: One Required.** Where the information charges that the president, cashier and a stockholder, present in the bank at the time of the robbery, were put in fear of some immediate injury to their persons, an instruction which requires the jury to find that only the cashier was put in fear is not error, since the cashier was the agent in charge of the bank's property and under the statute (Sec. 4530, R. S. 1909) it is only necessary to allege that the agent in charge of the property was put in fear, and the allegation that the president and stockholder were put in fear may be regarded as surplusage.

4. **NEWLY DISCOVERED EVIDENCE: Cumulative: Different Result.** The trial court is justified in overruling a motion for a new trial, where the newly discovered evidence, on which the motion is based, is cumulative and similar to the evidence offered by defendant at the trial. And the overruling of the motion is also justified if the court is of the opinion from a careful review of the record that the newly discovered evidence is not of sufficient importance that its introduction would probably produce a different result.

Appeal from Butler Circuit Court.—*Hon. Herbert H. Freer*, Judge.

Affirmed.

*C. T. Bloodworth* and *John A. Gloriod* for appellant.

(1) Statements of a third person not in the presence of the accused are not admissible for any pur-

pose. The State should not have been permitted to bring out such testimony under the guise that it was for the purpose of affecting the credibility of the witness. State v. Ethridge, 188 Mo. 352; State v. Newcomb, 220 Mo. 54. (2) When there is direct evidence of the guilt of the accused an instruction on circumstantial evidence should not be given. State v. Fairlamb, 121 Mo. 137; State v. Donnelly, 130 Mo. 642; State v. Nerzinger, 220 Mo. 36; State v. Crom, 209 Mo. 316; State v. Hubbard, 223 Mo. 80. (3) The court should have sustained appellant's motion for a new trial on the ground of newly discovered evidence, as the motion complied with all the requirements of the law in such cases. State v. Spiretus, 191 Mo. 41; State v. McLaughlin, 25 Mo. 111; State v. Murray, 91 Mo. 95; State v. Wheeler, 94 Mo. 252; State v. Bailey, 94 Mo. 315; Longdon v. Kelley, 51 Mo. App. 573; Bank v. Porter, 65 Mo. App. 448; Investment Co. v. Hoyt, 164 Mo. 140; Plumbing Co. v. Hugurin, 156 Mo. App. 68; Furniture Co. v. Inv. Co., 127 Mo. App. 312; Parker-Washington Co. v. Transit Co., 131 Mo. App. 508. (4) There is a variance between the information and the instruction in that the information charges the putting in fear of three separate persons and the instruction submits fear of immediate injury to only one of the three.

*Frank W. McAllister*, Attorney-General, and *E. M. Tipton*, of counsel, for respondent.

(1) "A wide range of cross-examination should be allowed to show the motive, interest or animus of the witness." State v. Babbitt, 242 Mo. 292; State v. Potts, 239 Mo. 412; State v. Deeker, 161 Mo. App. 398; State v. Steele, 226 Mo. 583; State v. Darby, 202 Mo. 150. (2) It is not reversible error to give an instruction on circumstantial evidence, where there is also direct evidence. State v. Fairlamb, 121 Mo. 137. (3) Cumulative evidence is not sufficient to grant a new trial on the grounds of newly discovered evidence. King v. Gibson, 206 Mo. 280; State v. Rockett, 87 Mo. 666; State v. Butler,

State v. Emmons.

67 Mo. 63; Stahlman v. Rys. Co., 183 Mo. App. 144; Tatum v. Crescent Laundry Co., 201 Mo. App. 97. (4) Instruction 1 follows the information and it correctly defines the law of robbery in the first degree. R. S. 1909, sec. 4530.

WILLIAMS, J.—Upon an information charging him with robbery in the first degree appellant was tried in the Circuit Court of Butler County, found guilty and his punishment assessed at twenty years' imprisonment. Defendant has duly perfected an appeal

A fair and concise summary of the testimony is found in the brief of the learned Attorney-General. from which we quote as follows:

"About eleven o'clock on the 13th day of June, 1919, the State Bank of Neelyville, a banking corporation, was robbed. Neelyville is a small town located in Butler County, Missouri, near the Arkansas line. At the time the robbery took place, Arthur W. Moore, cashier, H. W. McMullen, president, and E. W. Graves, a stockholder, were in the bank, where they had just completed a stockholders' audit of the bank. Moore, as cashier, was in charge of the bank and its funds.

"When the robber came in the front door, Moore, thinking he was a customer, started towards the front of the building to wait upon him. As Moore looked up he saw two big guns in the hands of the robber pointed at him. He made Mr. Graves get the money out of the cash drawer; and Mr. Moore was forced to open the safe. He took all the paper money in the bank, stuffing it around his waist beneath his shirt. About this time R. M. Abernathy came in the bank and he, too, was covered with the guns and told to take his position with the other men against the wall. The robber made his escape out of the back door and thence through a field into the woods about a half mile way. By auditing the books again, it was found that the robber had taken $2823.

"On June 19, 1919, six days later, the defendant was arrested in the City of St. Louis, and it was found that

he was going under the assumed name of William Harding. On his person were found two bank books. One was a bank book of the Baden Bank, where he had on deposit $1360, and the other was a bank book of Broadway Trust Company, where he had on deposite $800. The money in both banks the defendant admitted he deposited under the name of Jones A. Brenton. He had made the deposit on Monday, June 16th, 1919, just three days after the bank robbery. There was also found upon defendant about $100 in currency. The defendant was positively identified as the robber by witnesses, Moore, Abernathy, McMullen, and Graves.

"The defense was an *alibi*. A short time before the trial the appellant had been discharged from the army. On Thursday preceding the robbery on Friday, appellant came from St. Louis to his mother's home, which was a few miles south of Neelyville, in the State of Arkansas. His mother, his younger brother, and a hired farm-hand who was working for his mother, testified that he was home all day Friday, the day of the robbery. His mother testified on cross-examination that the appellant had left with her a money belt containing a large sum of money on Saturday, the day after the robbery, while he went to Reyno. Appellant testified that he won this money by gambling in St. Louis. He further explained that he went under assumed names, because it had been reported to him that he was wanted in Arkansas for horse-stealing, and for this reason his mother had written him under assumed names. On Sunday, about midnight, appellant testified, he took the train from Neeleyville for St. Louis. Witnesses were introduced showing that appellant's reputation was good, but this was based largely upon knowledge that the witnesses had prior to the time appellant went to the army."

I. Defendant's mother testified on behalf of defendant. Upon her direct examination she testified that her son was at her home the entire day upon which the bank robbery occurred and that he left her home two days later for St. Louis.

Cross-Examination.

During the cross-examination of this witness the State was permitted to show by her that four days after the robbery she wrote a letter to her son (then in St. Louis) under the name of William Harding in which she said: "I met Gosharn when I went to Moark and he was asking about Claud [the appellant] and I told him he had went to the Kansas wheat fields."

It is contended by appellant that the court erred in permitting the cross-examination to take such a wide range and erred more particularly in permitting the State to prove that in the letter she had made the contradictory statement about her son's whereabouts shortly after the robbery,

We are unable to agree with appellant in his present contention. It is difficult to lay down a hard-and-fast rule concerning the proper scope of cross-examination. In the case of State v. Decker, 161 Mo. App. 396, l. c. 398, the general rule is stated as follows: "A wide range of cross-examination should be allowed to show motive, interest or animus of the witness."

In the instant case, the letter written by the mother and sent to her son under an assumed name disclosed a rather clever device for the accomplishment of one of two things, viz., either to convey information to her son whom she knew to be then in hiding or else to mislead the authorities who might intercept the mail. In either event it shows an attempt to aid the flight of the defendant and throws necessary light upon the interest taken by the witness in protecting the defendant. It was therefore clearly admissible upon the question of the interest of the witness. Whether it was admissible for additional reasons it becomes unnecessary to inquire, because if admissible for any reason its introduction did not constitute error.

II. It is contended that the court erred in giving an instruction on circumstantial evidence. In this behalf it is contended that, since there was direct evidence

Circumstantial Evidence. of the offense, it was error to instruct on circumstantial evidence, and in support of this contention cases are cited which hold that it is not 'necessary to instruct on circumstantial evidence where there is direct evidence of the defendant's guilt.

In the case at bar there was both direct and circumstantial evidence of the defendant's guilt and while under such circumstances it would not have been error had the court refused an instruction on circumstantial evidence (State v. Crone, 209 Mo. 316, l. c. 331) we are at a loss to see how appellant could in any manner have been injured by the giving of such an instruction.

We are not cited to a case holding the giving of such an instruction, under the situation here involved, to be error, but on the other hand the only case cited by appellant which may be said to be in any manner in point expressly holds that the giving of such an instruction will not cause a reversal of the case. [State v. Fairlamb, 121 Mo. 137, l. c. 147.]

We therefore disallow this contention.

III. The information charged that H. W. McMullen, E. W. Graves and Arthur Moore were by the conduct of the defendant put in fear of some immediate injury to their persons, etc. Instruction One required Putting In Fear. the jury to find that only Arthur Moore, the cashier in charge of the bank, was put in fear. Appellant contends that the giving of the instruction was erroneous in that it did not require the, jury to find that all three of the persons mentioned in the information were put in fear.

The evidence shows that Arthur Moore, the agent and cashier of the bank, was in charge of the property of the bank. It was necessary, under the facts of this case, that only the agent in charge of the property be put in fear. [Sec. 4530, R. S. 1909.] It was therefore unnecessary that the jury make a finding concerning the

fear entertained by others. The allegation in the information as to the putting in fear of Mr. Graves and Mr. Abernathy may well be placed in the category of surplusage, and the instruction which omitted reference thereto was therefore not erroneous because of such omission.

IV. Appellant further contends that the court erred in refusing to grant a new trial on the ground of newly discovered evidence. The newly discovered evidence as disclosed by the affidavit filed in support of the motion for a new trial was to the effect that Otto Murry saw the person who robbed the bank in question, chased him some distance and shot at him; that he had an opportunity to and did observe said party; that defendant was not the person, but that the guilty person was larger and older than the defendant.

Newly Discovered Evidence.

Upon the trial of the case witness Laura Freynerer testified for defendant substantially as follows:

That she was 50 or 75 yards from the robber as he ran across an open field near the town of Neelyville immediately after the robbery and while the pursuers were shooting at him; that she watched him "a right smart little piece from the middle of that field there where he come over the fence and then down the lane a little piece;" that the robber did not look anything like the defendant. That the defendant "don't look as heavy, as stout as the man I seen." "He [the robber] was a lower, heavier-set man; was a low, heavy-set man." "I could see him [the robber] as plain as this floor, looking right down the big road."

One, among others, of the essential requirements to be shown before newly discovered evidence will justify the granting of a new trial is that the newly discovered evidence "is not cumulative." [State v. Whitsett, 232 Mo. 511, l. c. 523.]

As disclosed above, the newly discovered evidence suggested in aid of the motion for a new trial in the

instant case, was similar to the evidence offered by defendant upon the trial. The trial court was justified therefore in refusing the new trial upon the ground that it was cumulative. We are also of the opinion after a careful review of this record that the evidence is not of sufficient importance that its introduction would probably produce a different result. This also would supply sufficient grounds for the trial court's action. [State v. Whitsett, supra.]

It follows that the judgment should be affirmed. It is so ordered. All concur.