**STATE of Missouri, Respondent,**

v.

**George REECE, Jr., Appellant.**

No. 46986.

Supreme Court of Missouri,

Division No. 1.

June 8, 1959.

No attorney for appellant.

John M. Dalton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

HOUSER, Commissioner.

George Reece, Jr., was charged and convicted of robbery in the first degree with a dangerous and deadly weapon, and the jury further found that he had been formerly convicted of a felony. Punishment was assessed at life imprisonment in the state penitentiary. Defendant appealed but filed no brief, so we examine the assignments of error in defendant's motion for a new trial. Supreme Court Rule 28.- 02, 42 V.A.M.S.

Error is assigned in overruling defendant's motion for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. By subsequently offering evidence and testifying in his own behalf defendant waived any error as to the first motion. State v. Vincent, Mo.Sup., 321 S.W.2d 439. In testing the sufficiency of the evidence on the second motion for judgment of acquittal we consider as true the evidence favorable to the State and the favorable inferences reasonably to be drawn therefrom and disregard all evidence and inferences to the contrary. State v. Vincent, supra.

The victims of the robbery were Abe Nodiff, a grocer in the City of St. Louis, and Fred Liekweg, a grocery supplier. Nodiff testified that two men entered his store at 8:30 o'clock on the morning in question; that the smaller of the two, whom Nodiff positively identified as the defendant, pointed a gun at him, told him to turn around and took a loaded German Luger pistol, a money clip with seventy-five $1 bills in it, a wallet containing $90 and a coin purse containing about $10 in change from his pockets. Nodiff testified that the larger of the two, identified as James Willie Lee, took $20 or $25 from the cash register and struck, knocked down and robbed Liekweg who, during the course of the robbery, entered the store to make delivery for a doughnut company; that Lee took a billfold containing $40 from Liekweg and ordered Liekweg to the rear of the store, where Nodiff and defendant were standing. After learning that the space in the meat cooler was too small to accommodate Nodiff and Liekweg, the robbers ordered the victims to the basement. Defendant cursed Nodiff, threatened to kill him and to blow his heart out. Two minutes after the robbers made their getaway Nodiff and Liekweg came out of the basement and reported the robbery. A description of the robbers was broadcast. Lee, captured at 8:55 o'clock that morning, was found crouching under a mattress in a basement, holding a revolver in his right hand. Lee was wearing a trench coat which was missing a button; a matching button was found at the scene of the crime.

Between 9:15 and 9:30 o'clock that morning Nodiff went to a police station and saw Lee, whom he recognized. At the Bureau of Identification Nodiff was asked to look at some pictures to see if he could identify the other man. After looking at approximately forty pictures Nodiff picked out a picture of defendant as one of the two men who had perpetrated the robbery and positively identified defendant. The officers went to defendant's address where, after a thorough search, defendant was found in the basement hiding under a pile of rugs. At 3 o'clock that afternoon Nodiff went to the police station and personally and positively identified defendant as the same man he had seen in the morning with the pistol. At the trial Nodiff testified that at the time of the robbery defendant was wearing a dark hat and a raincoat commonly called a "trench coat." A trench coat belonging to defendant was found at defendant's house the day of the robbery. That coat, Exhibit 2, was produced in court. Nodiff testified that Exhibit 2 was "very similar" to the coat worn by defendant, although he could not say that it was the exact coat. At the trial Nodiff described the pistol used in the robbery as "a lighter type revolver, a long nose, possibly a .32." He said the pistol was held less than three feet in front of him. The gun, Exhibit 1, was taken from the possession of Lee when the latter was arrested. Exhibit 1 was produced in court. Nodiff testified that Exhibit 1 "looks, sir, much like the one I was held up with," and testified that during the holdup he saw a gun that "looked very much like this one"; that with the light shining, the side of the gun "looked very shiny." The trench coat Lee was wearing when arrested, Exhibit 3, was identified by defendant as "similar to the coat worn by Lee." Nodiff testified that the two men were in his store a period

of ten to twelve minutes. He took special notice of the smaller man, the defendant. Nodiff was looking directly at him during the robbery. He testified that defendant looked at him "when he had the gun in my face"—"when he threatened to shoot me"—"when he ordered us into the meat cooler." He noticed defendant's face "as a whole." The particular features which impressed him in identifying defendant were defendant's eyes and mustache. He paid special attention to his mustache and eyes. He remembered defendant's eyes because of "the way they are set, the way he glares." He said that he had "been in business long enough to recognize facial characteristics and individual faces." He testified that after identifying defendant at the police station he saw defendant at the preliminary hearing and again at the trial. Nodiff testified at the trial that he was "positive" defendant was the man who robbed him.

■ The foregoing constituted substantial evidence of defendant's guilt and made a submissible case on the charge contained in the information, both as to the commission of the crime of robbery with a dangerous and deadly weapon and the identification and criminal agency of the defendant. State v. Smith, Mo.Sup., 298 S.W.2d 354; State v. Andrews, Mo.Sup, 309 S.W.2d 626.

■■ Defendant contends that the evidence conclusively established the presence of the defendant elsewhere at the time of the commission of the alleged defense. Defendant testified that he was at his home throughout the entire morning of the robbery, performing household tasks such as painting floors, moving furniture and hanging curtains. In this he was corroborated by his parents, brother, girl friend and a tenant in the building. We cannot, however, say that the defense of alibi was "conclusively established" by the evidence given in behalf of defendant. It was within the province of the jury to disbelieve defendant and the several witnesses by whom he sought to establish an alibi. The testimony upon which the jury based its verdict was of probative force, convincing in character and given by a reputable citizen. We find no fault with the action of the jury in this respect. State v. Worten, Mo.Sup., 263 S.W. 124. The evidence sustained the conviction as against the defense of alibi. State v. Smith, 358 Mo. 1, 212 S.W.2d 787.

■ Defendant's assignments 7, 8 and 9 (admitting "incompetent, illegal, immaterial and prejudicial testimony," reading to the jury five numbered instructions "as to the law of the case," and permitting counsel for the State "to make improper, immaterial and prejudicial remarks to the jury in his closing argument") failed to set forth in detail and with particularity the specific grounds for complaint, as required by Supreme Court Rule 27.20(a). They are too general to preserve anything for appellate review. State v. Stehlin, Mo. Sup., 312 S.W.2d 838; State v. Tompkins, Mo.Sup., 312 S.W.2d 91, 92; State v. Whitaker, Mo.Sup., 312 S.W.2d 34.

Error is assigned in permitting State's counsel to interrogate defendant as to prior convictions because "the ostensible purpose of same cross-examination * * * (was) to create prejudice, passion and bias against the defendant." During the State's case in chief the State proved the prior convictions alleged in the information by identifying, introducing and causing to be read to the jury the records of the judgments of conviction of defendant and certified copies of records showing discharge from penal institutions upon lawful compliance with the sentences imposed. When the first of these was sought to be introduced defendant's attorney stated that defendant would admit the previous convictions as charged in the information. State's counsel insisted upon putting them in the record "so the jury can hear it." No objection was made by defendant. Thereafter, on cross-examination of the defendant, who took the stand in his own behalf, State's counsel, in an effort to show that the 1956 convic-

tion was a conviction of defendant jointly with Lee, inquired of defendant whether he was convicted of burglary second degree in 1956 and whether he was convicted along with James Willie Lee. Defendant's counsel objected to cross-examination of defendant as to his prior convictions "because they are admitted for the purpose of the record, and a further interrogation of them serves no purpose other than to prejudice the minds of the jury against the defendant." The State's attorney insisted upon his right to do so "in impeachment." The objection was overruled and extensive interrogation of defendant by State's counsel ensued in the course of which defendant's attorney repeated the objection, and further objected to "the constant repetition." All objections being overruled, State's counsel proceeded to interrogate defendant in detail with respect to the several prior convictions.

■ There was no error in permitting the State to cross-examine the defendant with respect to his former convictions. Section 546.260 provides that if the defendant testifies in his own behalf he "may be contradicted and impeached as any other witness in the case." State v. Jackson, 336 Mo. 1069, 83 S.W.2d 87[6], 103 A.L.R. 339. Section 491.050 provides that "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, * *." By taking the stand in his own behalf defendant subjected himself to cross-examination with respect to his former convictions, on the issue of his credibility as a witness. It was entirely proper for the State to impeach defendant in this manner. The objection that the purpose of the cross-examination was to create prejudice against the defendant, and that it was repetitious, since the prior convictions had been "admitted for the purpose of the record," is unavailing. Defendant's counsel's prior admission as well as the State's prior introduction of the records of the convictions bore on an entirely different issue, and were made and introduced for an entirely different purpose, namely, to establish and prove an essential element of the State's case under the information charging defendant under the Habitual Criminal Statute, section 556.280 RSMo 1949, V.A.M.S. The State was not thereby precluded from availing itself of its right to cross-examine defendant with respect to the prior convictions, if and when defendant took the stand in his own behalf as a witness in the case.

■ Defendant attacks Paragraphs 2 and 3 of the State's main verdict-directing Instruction No. 1. Paragraph 2 instructed the jury that "all persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly is the act of all and of each one so acting." Specifically, defendant says that Paragraph 2 is too general in that it fails adequately to define "joint commission" of an unlawful act. In Paragraph 3 the jury was required to find, beyond a reasonable doubt, that "defendant, either acting alone or jointly with another or others," did feloniously assault, etc. We find no fault with the definition on the ground of generality or inadequacy. Since the evidence indicated that another participated in the commission of the crime a definition of joint commission of a crime was appropriate, and the definition given satisfies the requirements. State v. Clark, Mo.Sup., 277 S.W.2d 593; State v. Burns, Mo.Sup., 280 S.W.2d 119; State v. Dowling, 360 Mo. 746, 230 S.W.2d 691.

■ It is further objected that the reference to "another *or others*" is confusing and misleading in that it conveys the impression, contrary to the evidence, that there were more than two persons jointly engaged in the commission of the crime. While the instruction in this respect was broader than the evidence, the use of the

words "or others" could not possibly have misled or confused the jury. It was at worst surplusage, the use of which in this particular instance could not have prejudiced the rights of defendant.

Finally, defendant assails Instruction No. 5, which follows:

"The Court instructs the jury that if you find and believe from the evidence in this case, beyond a reasonable doubt, that on the 20th day of December, 1957, Abe Nodiff and Fred Liekweg were assaulted by means of a dangerous and deadly weapon and were robbed, yet unless you further find and believe from the evidence in this case, beyond a reasonable doubt, that the defendant, George Reece, Jr., was present at the time Abe Nodiff and Fred Liekweg were assaulted and robbed, then you will find the defendant not guilty."

 Defendant claims that Instruction No. 5 is confusing as tending to convey to the jury the idea that defendant has the burden of proving his alibi beyond a reasonable doubt; that it is misleading because it tends to cast upon the defendant a greater duty than the law requires and that it fails to declare the rule of reasonable doubt as to the defendant's presence at the time of the commission of the alleged crime. The burden of proof is on the State to affirmatively prove the presence of the defendant at the scene of the crime. It is not a part of the burden of defendant to prove his alibi. State v. Hubbard, 351 Mo. 143, 171 S.W.2d 701. We find in Instruction No. 5 no transgression of these rules. Nor is the instruction confusing or misleading. The sense of the instruction is that if the jury find and believe from the evidence, beyond a reasonable doubt, that the assault and robbery were committed, yet they must acquit defendant unless they find and believe from the evidence, beyond a reasonable doubt, that defendant was present at the time and place of the assault and robbery. Although the "yet unless" device is awkward and the instruction is no model from the standpoint of the grammarian, it sufficiently conveys the thought that even though a crime was committed defendant cannot be convicted of the crime unless the jury find, beyond a reasonable doubt, that defendant was present at the time of its commission. In State v. Sanders, 106 Mo. 188, 17 S.W. 223, the following alibi instruction was approved: "Unless you find and believe from all the facts and circumstances given in evidence the presence of defendant at the place of the alleged assault, and his guilt beyond a reasonable doubt, you should acquit." The sufficiency of an instruction in substantially the same form was upheld in State v. Shelton, 223 Mo. 118, 122 S.W. 732 and State v. Peters, Mo. Sup., 123 S.W.2d 34. Its similarity to the instant instruction is apparent. We are unable to follow the argument that Instruction No. 5 placed the burden upon defendant to prove his alibi beyond a reasonable doubt or that it casts any duty whatever upon the defendant. The only logical deduction to be drawn from a reading of Instruction No. 5 is that the burden of proof with respect to the presence of the defendant at the time and place of the crime rests upon the party attempting to prove his presence then and there. Obviously that party is the State and not the defendant. All of the State's evidence tended to show his presence at the time of the crime. All of the defendant's evidence tended to show his presence elsewhere. The jury could not reasonably have been confused as to which party was seeking to establish the presence of the defendant at the time and place of the commission of the crime. The quantum of proof required by the instruction (beyond a reasonable doubt) is the proper amount. With respect to the contention that it fails to declare the rule of reasonable doubt as to defendant's presence at the time of the commission of the alleged crime, it should be noted that at the close of all the evidence defendant's counsel had no instructions to offer and requested none. Nevertheless, the court gave Instruction No. 5, which is

the converse of the State's main instruction insofar as the main instruction required defendant's presence at the scene of the crime. It correctly instructed the jury on the subject. If defendant regarded as necessary any further elaboration or explanation on the question of reasonable doubt, defendant should have asked for clarification. State v. Shriver, Mo.Sup., 275 S.W.2d 304. In the absence of a request therefor the court cannot be convicted of error in failing to give a clarifying instruction with reference to alibi.

An examination of the record reveals no deficiency in the information, verdict or judgment and sentence.

Finding no error in the record, the judgment and sentence are affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.