**STATE of Missouri, Respondent,**

v.

**Floyd Delorace POPE, Appellant.**

No. 49439.

Supreme Court of Missouri,

Division No. 2.

Feb. 11, 1963.

No appearance for appellant.

Thomas F. Eagleton, Atty. Gen., Lynn B. Nelson, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

EAGER, Presiding Judge.

Defendant was tried on an amended information for first degree robbery and found guilty by a jury. The court found, apart from the jury, § 556.280, that he had been convicted, sentenced and imprisoned on four charges of robbery in the State of Illinois, the sentences having run concurrently. Thereupon, after considering and overruling a motion for new trial, the court sentenced defendant to a term of fifteen years in the penitentiary. Since no brief is filed here, we consider such assignments of the motion for new trial as are sufficient, and those parts of the record required by Criminal Rule 28.02, V.A.M.R.

■ One such assignment raises the sufficiency of the evidence to sustain a conviction, hence we state the facts. In view of the verdict, we state them favorably to the State. Edward Dugan, a truck driver on local runs in St. Louis, had gotten off work at about 9:30 p. m. on December 13, 1961; thereafter he visited a "few bars" drinking beer, leaving the last one at some time around 12:30. As he drove along Washington Avenue on his way home (apparently in the 4400 block) he felt, as he stated, a need to "relieve" himself, so he turned into a dead end alley about 75 feet in length; he drove along this for about 50 feet, and turned his car to the left into a vacant lot or yard, so that he might back out when his mission was concluded. His left door glass was down; just as he was starting to get out of his car, a man ap-

peared on his left, put his hand on his shoulder and asked if he had identification; this man also asked what he was doing there. Dugan answered the latter inquiry very directly; following a few further remarks of no particular consequence, Dugan took out his wallet to show his identification. At this point the man (later identified as this defendant) reached for Dugan's wallet and he, Dugan, threw it on the floor, supposedly under the front seat. Thereupon the man opened the door and got partially into the car (or leaned in over Dugan) "and was wrestling" with Dugan, obviously for the possession of the wallet; this man was then more or less on top of Dugan. At about that stage of the proceedings "another colored fellow" walked up and when Dugan saw him, he (Dugan) "just quit fighting * * * just gave up and let him take the wallet and money." The entire context indicates that the first man, the one who was "wrestling," was the one who took the wallet; in fact, Dugan testified directly that this defendant was the one who had his wallet, and that he saw it in his hand. The other man, after the first one had gotten the wallet, "stood there and hit me about five times in the forehead" with his "hand and knuckles." Money in an amount between $120 and $130 was taken from the wallet which was then thrown back into the car. The man who got the wallet was larger than Dugan. The two men then conversed briefly and told Dugan to "get the hell out of there" and not to come back. At some point in this sequence of events, Dugan had seen a woman standing about 30 feet away beside a building. Dugan testified that he got a good look at defendant's face as the latter stood outside the car after the robbery, that he was not masked and that there were lights in the area, possibly surrounding street lights; also that he noted that this man was wearing an *earring* in his left ear. Dugan, immediately thereafter, drove until he found a police car in the neighborhood and returned to the scene with the officers; he testified that he was not familiar with the neighborhood. They

found no one upon their return. One of the officers testified that there were "floodlights" in the rear of at least one building at the scene, and he thought also on others.

Defendant was arrested, along with two women, in front of 4458 Washington, a hotel and cocktail lounge, about 2:00 a. m. on December 17, 1961; this was approximately three days after the robbery. He was not then arrested for this robbery, but the arresting officers knew of it. One officer testified that they booked and held the three "for investigation suspected of drug addiction." One of these officers had previously seen defendant at least twice; at the time of the arrest the women with defendant were trying to stop passing cars. When arrested, the defendant was wearing an earring "with a white stone" in his left ear lobe. A little later Dugan viewed defendant in the "line-up," and identified him; he testified: that he recognized the earring at the station, but that he also identified defendant by his face, his mustache, and his voice,—the identity not depending "entirely" upon the earring. Incidentally, the earring was identified at the trial and received as a State's exhibit.

The sole evidence offered on the merits by defendant was the testimony of Dugan at defendant's preliminary hearing. This was read from the reporter's notes. The differences shown were rather immaterial. Some reference was made there to a knife, apparently arising first in an answer of Dugan; he thus testified: "I don't know if he had a knife * * *"; he then answered in the negative when asked directly whether defendant had a knife; he also answered in the negative when asked whether defendant got "in your automobile." Naturally, there are minor differences in details and phraseology when that testimony is compared with the testimony at the trial. All of this was for the jury and concerned merely the weight of the State's evidence.

The trial court did not err in denying defendant's motions for acquittal. The

chief issue of substance was the identification of the defendant; Dugan did identify him directly and without equivocation, and that issue was resolved; the credibility of this witness was solely for the jury. The evidence supplied every necessary element of first degree robbery. Section 560.120, RSMo 1959, V.A.M.S. (To which revision all statutory references will apply.) It was ample to show both "violence" and a "putting * * * in fear," whereas either was sufficient. State v. Van Horn, Mo., 288 S.W.2d 919, 921. As to the requirement of violence, it was said in State v. Spivey, Mo., 204 S.W. 259, 261: "Snatching a valuable article from another is always denominated robbery where any force is exercised either to overcome the resistance of the person robbed or in detaching the article taken where it is fastened in some way to the clothing or person of the one robbed." See also State v. Whitley, 327 Mo. 226, 36 S.W. 2d 937.

■ Defendant has assigned error in the refusal of his offered instructions numbered 1, 2, 3 and 4; these assignments were made in separate paragraphs of the motion, but each stated in identical language that error was committed for the reason that the respective instruction "is a fair and proper declaration of the law covered by said instruction." Missouri has long followed the precepts of our § 547.030 and of Criminal Rule 27.20 requiring that the grounds assigned for the granting of a new trial shall be stated "in detail and with particularity." Our cases have uniformly construed this to mean, as applied to the giving and refusal of criminal instructions, that the assignment must point out the *reason* why the action was erroneous. State v. Grubbs, 358 Mo. 323, 214 S.W.2d 435, 437, and cases cited; State v. Tebbe, Mo.App., 249 S.W.2d 172; State v. Thompson, Mo., 29 S.W.2d 67, 70; State v. Shuls, 329 Mo. 245, 44 S.W.2d 94. In several recent cases where assignments on the refusal of one or more instructions had certainly been no more vague or general than those now under consideration, and probably less so,

our court held the assignments to be insufficient. State v. Baker, Mo., 293 S.W.2d 900, 906; State v. Harris, Mo., 351 S.W.2d 713, 716; State v. Turner, Mo., 320 S.W.2d 579, 586; State v. Linders, Mo., 224 S.W.2d 386, 390; State v. Miller, 357 Mo. 353, 208 S.W.2d 194, 201. In State v. Harris, supra, the court said, at loc. cit. 716: " * * * his assignment in the motion that the court erred in refusing instruction A (also relating to the testimony of an accomplice) 'because it fairly and fully declared the law in said cause' is quite indefinite and does not state a ground or cause for a new trial (Sup. Ct.Rule 27.20, V.A.M.R.; State v. Johnson, (Mo.) 293 S.W.2d 907), hence the giving and refusal of these two instructions is not subject to review." It is entirely obvious that the logic of and the reason for this rule, as applied to refused instructions, lies in the thought that a defendant should be required to specify in some detail why the court's *given* instructions were deficient or inadequate, why a further instruction or instructions upon a specific subject were needed, and how defendant's proffered instructions would correct the supposed deficiencies without mere repetition. See, generally, State v. Baker, supra, 293 S.W.2d loc. cit. 906. Defendant's sole assignment of inadequacy here concerned given Instruction No. 4, and as demonstrated, no reason has been stated to show why its claimed defects would have been cured by any of defendant's proffered instructions.

Under these circumstances we do not consider defendant's Instructions numbered 1, 2, 3 or 4, or their refusal. Such rules of practice are of little value if continuously disregarded, not only by counsel but also by the courts in criticizing the violation but proceeding nevertheless to decide the merits. The violation here is clear.

■■ The next two assignments will be considered together; both involve the use of the somewhat antiquated term "force and arms." One assignment states that it was erroneous to use this term in given Instruction No. 3, because such words were

not contained in the information. The very simple answer to this assignment is that these specific words *were* contained in the information upon which defendant was tried (page 5, original transcript). The assignment may have been made inadvertently. The next assignment is that the court erroneously included this term in its Instruction No. 3, whereas the evidence of the State showed "that no arms were in fact used * * *." Perhaps counsel has misapprehended the real meaning of the term. In Black's Law Dictionary, Fourth Ed., at p. 774, it is defined as follows: "FORCE AND ARMS. A phrase used in declarations of trespass and in indictments, but now unnecessary in declarations, to denote that the act complained of was done with violence. 2 Chit.Pl. 846, 850." We must concede that the jury would not have had ready reference to Mr. Black's definition. We look, however, to the manner of the use of this phrase in the instruction, and we quote it in part: "If you find and believe from the evidence, beyond a reasonable doubt, that at the City of St. Louis and State of Missouri, on or about the 14th day of December, 1961, at the city of St. Louis aforesaid, the defendant, with force and arms, in and upon one Edward Dugan feloniously did make an assault, if you so find; and the said Edward Dugan in fear of an immediate injury to his person, then and there feloniously did put; and by force and violence to his person one hundred twenty dollars, lawful money of the United States of the value of one hundred twenty dollars; all of the money and property of the said Edward Dugan from the person and in the presence, and against the will of the said Edward Dugan then and there, with force and violence as aforesaid, feloniously and violently did rob, steal, take and carry away, * * *." It is immediately obvious that the term was used only in a preliminary and more or less incidental way; associated with the hypothesis of the actual *robbing* are the terms "in fear of an immediate injury to his person" and "by force and violence," these being used in the conjunc-

tive, which was an unnecessary burden under the statute. The term "force and arms" is wholly foreign to our statutory definition of armed robbery, i. e., "robbery * * * by means of a dangerous and deadly weapon * * *." Section 560.135. In State v. Perry, Mo., 233 S.W.2d 717, where a similar preliminary phrase was used in an information coupled with subsequent specific allegations of the use of a pistol, the court said, loc. cit. 719: "The allegation as to 'an assault with a dangerous and deadly weapon, towit, a pistol, loaded with gunpowder and leaden balls' invoked the more severe penalty prescribed by the first provision of Sec. 4453, R.S.1939, Mo.R.S.A. State v. Vigus, Mo.Sup., 66 S.W.2d 854, 857." This would seem to represent a typical disregard of the phrase "force and arms." The phrase is simply superfluous and a meaningless bit of antiquity. Little, if any, effect appears ever to have been given to these words in our criminal jurisprudence, although their occasional use indicates the need for an overhauling of our ancient forms of indictment and information (and the same may be said of other wording in this information). We know of no Missouri case in which a defendant has been charged with or convicted of the offense of robbery with a dangerous and deadly weapon without allegation or evidence of the possession or use of a designated weapon, or upon a charge stated in the words of § 560.135. In any event, the element of a dangerous and deadly weapon goes merely to the penalty, State v. Vigus, Mo., 66 S.W.2d 854; it is not a charge of a separate offense, as such. Section 560.135. The entire matter of punishment here was for the court under § 556.280, and the jury had nothing to do with it. The sole question before us is whether the use of this phrase may reasonably be held to have *prejudiced* the jury against defendant on the question of his guilt. Our conclusion is that it did not. While the jury probably could not have known its technical meaning, essentially it meant nothing to them. If the jury thought that the instruction required the actual use of "arms" (in

the sense of a weapon), then this merely imposed an additional burden upon the State, which it had *foolishly* assumed. Also, the very fact that the court thus submitted the guilt of the defendant to the consideration of the jury, when there was *no evidence* whatever to show the use of any weapon, should certainly have been sufficient to cause any intelligent jury to disregard the phrase. The assignment is denied. The information here was merely a charge of first degree robbery and defendant was convicted of that. The punishment imposed was well within the limits prescribed for that offense. Section 560.135.

 The sole remaining assignment was that Instruction No. 4 did not properly declare the jury's duty to weigh the evidence because: it was too general, it imposed no limitation upon the "range of the jury," it was incomplete, and it did not properly caution the jury that it could not assume any fact necessary to conviction. The instruction was very short, in words as follows: "The jury is further instructed that the Court does not mean for you to assume as true or established any of the matters mentioned or referred to in the instructions, but leaves you to determine from the evidence whether or not such matters have been established as facts by the evidence." This was merely a cautionary instruction, there was no error in it, and it went as far as the court could consistently go on the subject. Also, it did the very things which defendant claims it did not do. The substantive issues had been fully covered in other instructions. This assignment is denied.

We mention in passing that defendant has recently filed here, pro se, motions seeking to "withdraw" his appeal for the reasons: that his attorney did not brief the appeal, that the motion for a new trial "is not likely to be sufficient to warrant a reversal," and that he is now in possession of evidence which would prove perjury of the State's witnesses. In the first of these motions he asked that "his appeal be temporarily trans-

ferred back to the trial court * * *," whereas in the latter he apparently has in mind proceedings under Criminal Rule 27.-26. These motions were overruled. Defendant had, in part at least, apparently overlooked the fact that a dismissal of his appeal would totally reinstate the judgment and sentence. We have preferred to proceed in the regular course to examine the alleged errors raised in his motion for new trial.

Finding no prejudicial error in any matters properly raised in the motion for new trial, and finding also no error in those matters which we are required to examine under Rule 28.02, the judgment is affirmed.

All of the Judges concur.