STATE of Missouri, Respondent,

v.

Clinton Edward HAWKINS, Appellant.

No. 51078.

Supreme Court of Missouri,
In Banc.

Oct. 9, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, David Dempsey, Special Asst. Atty. Gen., Clayton, for respondent.

H. L. C. Weier, Dearing, Richeson, Weier & Roberts, Hillsboro, for appellant.

EAGER, Judge.

Defendant was charged by amended information as an habitual offender, § 556.280,[1] with robbery in the first degree by means of a dangerous and deadly weapon. Section 560.120. A jury found him

---

1. All references to statutes are to Revised Statutes of Missouri, 1959, and V.A.M.S.

guilty as charged and, after an unavailing motion for new trial, he was sentenced by the court to confinement in the custody of the Department of Corrections for a period of ninety-nine years. Section 560.135. He appeals.

The case has pursued an unusually lengthy course since sentence was imposed. Additional time was granted for filing the transcript; thereafter the case was submitted and an opinion was written in Division Two of this Court. Upon a dissent it was transferred to the Court In Banc and argued there twice. Prior to the last argument we ordered that counsel be appointed to represent defendant upon the appeal, and a continuance was granted upon his request. Thus, highly competent counsel briefed and argued the case for the appellant prior to the last submission. We consider only the questions so presented. The points raised involve the evidence to such an extent that we shall need to state the facts in some detail.

On the morning of February 28, 1964, a man driving an automobile and wearing a stocking mask approached the Farmers Bank of Antonia in Jefferson County, and stopped in front of it. Shirley Recar, a teller, was looking out the window from her teller's counter at the front of the bank, saw him and screamed "here comes a man wearing a mask, someone lock the door"; thereupon she ran to the rest room in the rear and appeared no more in the sequence of events. Wilma Otto, assistant cashier, was at her window or counter, presumably the next one; she picked up her purse and took out some keys; the masked man walked in with a revolver in one hand and a brown satchel in the other. He came directly to her window, laid the gun on her counter and said "move back"; Wilma took one step back and the man said "move back farther"; she did. The man then climbed over the counter and, with the gun in his hand, said to her "move back farther or I'll blow your head off"; apparently she did so, and the man immediately began taking the money out of the

cash drawer *next to hers,* putting it in his satchel; at that time he told her to go to the back office which she did, since he was pointing the gun at her; at this time the telephone rang and he told her not to answer it, but she came back into the bank proper and then saw that he was still taking money from the *"cash drawers."* Wilma had tripped the burglar alarm and expected one or more of the business neighbors to come; at this time she saw Mr. Freedman (one of such neighbors) outside and yelled to him "run Mr. Freedman, it's a holdup." At that time the robber left the bank and was intercepted by Mr. Freedman who, with some rather delayed help, subdued and captured him. One shot was fired from the revolver and it penetrated the bank window, shattering glass on Wilma. Five loaded shells remained in the gun. The money was recovered, $5,712, the precise amount missing from the cash drawers. At the trial defendant was definitely identified as the robber by certain of those who saw him after his mask was removed.

Granville Cook, cashier of the bank, was in his office about 25 feet from the door when the robber entered; he saw the man enter and tripped the burglar alarm in his office. He could not and did not (from his position) see the man actually taking the money from the cash drawers, and he apparently did not leave his office until the man left. Various exhibits were identified at the trial, but they are not material to our discussion.

The defendant did not testify; the evidence in his behalf consisted only of the testimony of his mother and wife to the effect that he had suffered two head injuries (one when a child) and that there were periods when he would seem dazed and uncommunicative for days at a time; also, that he had bad headaches and at times did not have any recollection of where he had been. A psychiatrist from the Farmington State Hospital, Dr. Doronila, where defendant had been kept for more than a month for examination, tes-

tified that all of defendant's reactions were within normal limits, that he had no psychosis and, in substance, that no mental disease or defect was found. The jury was fully instructed on that subject pursuant to Section 552.030.

The points briefed and argued here all concern Instruction No. S–1, which, in its pertinent parts, was as follows: "You are instructed that if, upon consideration of all the facts in the case, in the light of the court's instructions, you believe and find from the evidence, to a moral certainty and beyond a reasonable doubt, that at the County of Jefferson and State of Missouri, on the 28th day of February, A.D. 1964, the defendant, Clinton Edward Hawkins, did feloniously and wilfully, by means of a dangerous and deadly weapon, towit: a revolver, by force and violence or by threats of force and violence to the person of Granville Cook, Wilma Otto, and others, employees, clerks, agents and officers of the Farmers Bank of Antonia, if you so find, and against their will, if you so find, and by putting them, or any of them, in fear of any immediate injury to their person, did rob, steal, take and carry away from their presence, person and possession, Five Thousand Seven Hundred Twelve Dollars ($5,712.00) lawful money of the United States, or any part of said sum of money, * * *.

"The word 'robbery', as used in these Instructions, means the felonious taking of the money or property of another, of any value whatever, from a person, or in his or her presence, or from his or her possession, and against his or her will, by violence to his or her person, or by putting him or her in fear of an immediate injury to his or her person."

■ We shall note first certain well established principles as fixed by our decisions, and then consider appellant's points. Section 560.120 proscribes one offense, i. e., first degree robbery, which may be charged or proven as having been accomplished in either of two ways,—namely, by *violence* to the person *or by putting* him or her *in fear* of some immediate injury. The State need not prove both. State v. Van Horn, Mo., 288 S.W.2d 919; State v. Thompson, Mo., 299 S.W.2d 468; State v. Pope, Mo., 364 S.W.2d 564; State v. Johnstone, Mo., 335 S.W.2d 199; State v. Reeder, Mo., 394 S.W.2d 355; State v. Burns, Mo., 280 S.W.2d 119. And it has been held that where both alternatives are submitted in the conjunctive with evidence to support only one, there is no error, for the State has assumed a greater burden than necessary. See the discussion in State v. Neal, Mo., 416 S.W.2d 120, opinion filed June 12, 1967; and see also State v. Burns, supra; State v. Cusumano, Mo., 372 S.W.2d 860. We are not concerned with that proposition here and need not rule on it, for we hold that on this record there was substantial evidence of both violence and of putting in fear. Except in Neal, supra, the Missouri courts do not seem to have held clearly that conduct such as we have here constitutes "violence." We so hold now. The following authorities tend to support that holding: State v. Rose, Mo., 325 S.W.2d 485; State v. Hall, Mo., 7 S.W.2d 1001; State v. Broderick, 59 Mo. 318; State v. Eddy, Mo., 199 S.W. 186; 46 Am.Jur., Robbery, §§ 14–16, pp. 145–147. Even an assault may be committed without a striking or touching. Eddy, supra. According to accepted definitions, "violence" may consist of violent, menacing, turbulent, and threatening action or procedure. (Webster's International Dictionary, 3rd Ed.), and particularly so if the actor possesses the obvious means of inflicting injury or death. Here, the flourishing and pointing of the gun, climbing over the counter, ordering the assistant cashier back (twice) and threatening to blow her head off, constituted substantial and submissible evidence of violence under § 560.120. The decision in State v. Vandament, Mo., 299 S.W.2d 532, was based on acts held to have occurred subsequent to the taking and to aid an escape, and the facts are therefore different. The purse snatching cases, as indicated in State v.

White, 326 Mo. 1000, 34 S.W.2d 79, seem to be based upon the theory that the violence is not used to overpower the person, but merely to get the property. In any event, we do not regard them as binding or even persuasive here.

The specific complaints made of Instruction S–1 are: (A) that it permitted the jury to find violence or threats of violence to persons not named; (B) that it permitted consideration of such as offered to persons not employees of the bank and after defendant had obtained possession of the money and was leaving; (C) that "threats of violence" are not a proper element of the offense of robbery, although perhaps evidence of intimidation; that the term should not have been used in the disjunctive with "violence," and as used with the "loose references" to "others," it was prejudicially erroneous; (D) that the submission of "putting in fear" as to different "victims" in the disjunctive allowed the jury to speculate and the submission was not supported by the evidence.

■■■ Points A and B may be considered as one. What counsel seems to suggest is that the language of the instruction permitted the jury to consider the scuffle between defendant and Mr. Freedman outside the bank as a part of the violence or threats upon which a finding of guilt might be based. It has been held that evidence of violence or intimidation used in effecting an escape *after* a robber had obtained possession of the property, was not sufficient to support a charge of robbery. State v. Vandament, Mo., 299 S.W.2d 532. See also State v. Holmes, 317 Mo. 9, 295 S.W. 71; State v. Parker, 262 Mo. 169, 170 S.W. 1121. Counsel is thus correct in suggesting that violence or intimidation used or effected by defendant on Freedman may not constitute an element of the offense of robbery. But this does not prove the instruction to be erroneous. The term "and others," in the instruction was followed immediately by the words "employees, clerks, agents and officers of the Farmers Bank of Antonia," and these words, as we construe them, clearly limited all such "others" to persons who were *employees of the bank*. The jury could hardly interpret the instruction otherwise; all the employees were inside the bank, and the instruction did not, as contended, unduly expand the consideration of "violence" or "threats of violence."

■■■ (C) We agree with counsel that "threats of violence," as such, do not constitute an element of first degree robbery. The authorities cited by him on this point indicate generally that an instruction is improper when it is broader than the evidence, or when it submits a different offense from the one charged. That may be conceded as a general proposition. We have held that that was substantial evidence of "violence" here, and hence a submission of that element would have been proper. But at the trial the State, in a multiplication of words, submitted a taking "by force and violence *or by threats of force and violence*." The element of threats, submitted thus in the disjunctive, may "be evidence of intimidation or putting in fear" (as counsel for defendant concedes); but it is not the equivalent of violence. Hence, by that part of the submission the jury was only *required* to find the lesser of the two elements, i. e., an intimidation or a putting in fear, which actually was a mere duplication of the second phase of the total conjunctive submission, namely, "and by putting them, or any of them, in fear of any immediate injury * * *." We hold that, although the first submission was thus insufficient as a submission of violence, it was mere surplusage or, at the most, harmless error. The reference to "others" was not reasonably subject to the interpretation which counsel places upon it, as we have already indicated, and did not render the instruction erroneous.

■■■ (D) We now consider the submission of taking the property by "putting in fear"; the "them, or any of them," as used in that part of the submission, neces-

sarily referred back to "Granville Cook, Wilma Otto, and others, employees, clerks, agents, and officers" of the bank. Counsel say that this disjunctive submission (i. e., "them, or any of them,") "allowed the jury to speculate as to the objects of defendant's purpose and was not supported by the evidence." This statement is not particularly clear to us. By reference to the argument, however, we see what is apparently the meaning. Counsel there says that, for one thing, the instruction permitted the jury to find defendant guilty by reason of having put *Shirley Recar* in fear although she never saw the robber outside his car; also, that by permitting the jury to find that fear was created in "others" in connection with the "episode" outside the bank it was erroneous. We have already eliminated this latter contention. It thus seems that the objection really is: that there was no evidence to support a finding of guilt based upon a "putting in fear" of Recar or Cook, because the money was not *obtained by placing them or either of them in fear.* If counsel means, conceivably, that there was no evidence that Recar and Cook were actually put in fear we deny the contention without difficulty. Recar immediately screamed and ran, and Cook, after seeing the robber enter, remained well out of the way in his office until the whole affair was over. Fear may be presumed in such instances, and need not be expressly shown. State v. Thompson, Mo., 299 S.W. 2d 468; State v. Kennedy, 154 Mo. 268, 55 S.W. 293; State v. Ball, Mo., 339 S.W.2d 783, 91 A.L.R.2d 1042; State v. Pope, Mo., 364 S.W.2d 564. Both the presumption and the testimony of Wilma Otto show that she was also placed in fear; her earlier testimony was to the effect that at the time it all seemed like a movie, but she later said that she guessed she was afraid and just didn't realize it. She saw the gun, and followed defendant's orders; as stated in State v. Thompson, Mo., 299 S.W.2d 468, at loc. cit. 474: "By all standards of logic it is not conducive to one's sense of security and well being to be kept under the nose of an automatic pistol for 10 or 15 minutes,

especially when one of the robbers has said to the victim: 'Give me your money or I will shoot.' Fear need not be shown expressly."

 The statute very obviously means that the fear created should have a direct connection with the obtaining of the property, but this does not necessarily require such proof as that of proximate causation in personal injury cases. In the usual robbery case only one victim is involved and the issue is simple; here the money belonged to the bank and it was the bank which was robbed; all three of the employees were jointly in charge of the money. Defendant did not merely take money from Wilma Otto's drawer; he first took the money from "the cash drawer next to mine" (presumably Shirley Recar's) and later was "still taking money from the drawers." This was the *bank's* money, not Otto's, and no one employee had exclusive possession of it. There was substantial evidence and a presumption that all three employees were placed in fear, and defendant took the money from the possession or constructive possession of all three. The words of the statute, namely, *"by putting him or her in fear,"* may equally be construed as the plural "them," under the express direction of § 1.030. The jury was specifically required to find that defendant "did rob, steal, take and carry away * *" the money by putting these persons "or any of them" in fear, and it was thus *required* to find that the taking resulted from the *fear* which it found to exist (be it to one person, two or three). The use of the term "or any of them" was certainly not to be recommended but its use was harmless under these circumstances, and it could not have misled the jury. We so hold, noting again that every one of the three was fairly shown to have been put in fear, and also that every one of the three was included in a joint possession and control of the money. See, generally: State v. Reece, Mo., 324 S.W.2d 656, 660–661. The evidence in this case was clear and wholly undisputed; the issue was simple.

There was no real possibility of an acquittal on this evidence, unless the jury found the defendant not guilty by reason of mental disease or defect. It seems clear to us that the finding of guilt could not possibly have been influenced by any irregularity or surplusage contained in Instruction S–1. It was not a misdirection and it did not mislead the jury. The finding of defendant's guilt is affirmed.

However, one further point remains for our consideration. Defendant was charged by amended information under our Second Offender Act, § 556.280. That section provides, insofar as it concerns our present question, that: "Evidence of the prior conviction, sentence and subsequent imprisonment or fine, parole, or probation shall be heard and determined by the trial judge, out of the hearing of the jury prior to the submission of the case to the jury, and the court shall enter its findings thereon. If the finding is against the prior conviction, sentence and subsequent imprisonment or fine, parole or probation, then the jury shall determine guilt and punishment as in other cases."

 The Court received, over objection, a document certified by the Department of Corrections to show prior conviction and imprisonment. That document is not shown in our transcript and we may not determine its sufficiency as proof. Thereafter the Court found that: "* * * the defendant will, by the Court, be found to have been imprisoned in the pen*i*tentiary previously in accordance with the certification of the record, as shown in Exhibit #6." This was not a sufficient compliance with the statutory requirement which is, as we construe it, that in order to make the act applicable the Court must find that the defendant had been convicted of and sentenced for one or more offenses punishable by imprisonment in the penitentiary *and* that he had subsequently been imprisoned, fined, paroled or placed on probation therefor (in the alternative, to accord with the evidence). See, State v. Crow, Mo., 388 S.W.2d 817, and State v. Hill, Mo., 371 S.W.2d 278. The present findings do not follow the statute and we cannot rewrite it. Nor is it our function to make the findings here. The judgment is therefore reversed, and the cause will be remanded in order that the trial court may bring the defendant before it, with counsel, at an appropriate time, for further consideration of the evidence already submitted on this issue, and of any such additional evidence as may be submitted, and thereupon to make appropriate findings as indicated in this opinion. If the trial court then finds one or more prior convictions, sentences, and imprisonment or parole therefor in accordance with § 556.280, it may proceed to grant allocution and to render judgment and impose such sentence as it deems proper; if not, then a new trial must be ordered, for the jury would then be entitled to assess the punishment. Such procedure is discussed at length in State v. Hill, Mo., 371 S.W.2d 278, at pp. 282–283.

Except as indicated, we find those parts of the record which we examine under Rule 28.02 to be sufficient. The judgment is reversed and the cause is remanded for further proceedings as indicated in this opinion.

FINCH, DONNELLY and STORCKMAN, JJ., concur.

HENLEY, J., dissents in separate dissenting opinion filed.

HOLMAN, C. J., and SEILER, J., dissent and concur in dissenting opinion of HENLEY, J.

DISSENTING OPINION

HENLEY, Judge.

I respectfully dissent for the following reasons.

I find myself unable to agree with the majority holding that defendant's conduct constituted "violence to the person" within the meaning of § 560.120. That section provides that the offense of robbery in the first degree may be committed in either of two ways, namely: (1) by violence to the person, or, (2) by putting in fear of some immediate injury to the person. It is my opinion that in describing alternative methods by which the offense could be accomplished the legislature intended to and did make a distinction between the two; that the legislature understood and intended that each method have a separate, distinct meaning, and that one requires proof different from the other. As I see it, "putting *in fear of some* immediate *injury* to the person" is a step short of *"violence* to the person;" it is a state of mind, a state of "fear" that some immediate physical injury which has not been wrought upon the person may be inflicted. I would hold that "violence to the person" means violence *to the person*, inflicted; some physical violence to or assault of the person, however slight; that it does not mean a display of "violence," by threats or conduct, in the presence of the person causing fear of personal injury that may never be accomplished. The latter accords solely with "putting in fear of some immediate injury to the person," the second method as distinguished from the first. The first method requires proof of infliction of physical violence; the second does not. I hold the opinion that it is this distinction that the legislature intended to make between the two methods. Having this opinion, I would hold that there was no substantial evidence in the record of violence to the person of the agents and employees of the bank.

However, I would hold that the evidence does support a taking of the bank's money by putting Wilma Otto in fear of some immediate injury to her person. But, in submitting the method of taking by putting in fear, instruction S–1 does not correctly state the law.

The statute proscribes a taking from the person [1] of the agent in charge, against the will of the agent, *by* putting *him or her* in fear of some immediate injury to *his or her* person. It is the taking from the person and against the will of the agent in charge by putting that person in fear that the statute proscribes; not the taking from that person, against the will of one or more other agents of the owner *by* putting in fear "any [one or more] of them." This instruction, by the use of the words "or any of them," directs a verdict of guilty upon a finding by the jury of a taking of the bank's money from Wilma Otto by putting someone else in fear of some immediate injury to his person. In other words, the instruction would authorize a verdict of guilty if the jury found that the taking from Wilma Otto was by putting either Granville Cook or Shirley Recar, or both, in fear, although the agent from whose person the money actually was taken may not have been in fear and the taking not against her will. Put another way, the instruction authorizes a verdict of guilty if any of the other agents of the bank were put in fear without a requirement that the jury also find that the taking was by putting the agent from whose person the money was actually taken in fear of some immediate injury to *her* person. In these respects the instruction misled and positively misdirected the jury as to the law of the case. Had the instruction required that the jury find that Wilma Otto, alone, as the

---

1. The proof is that the bank's money was taken from the possession and in the presence of Wilma Otto rather than from her person. This court has held that a charge of robbery from the person is satisfied by proof that the money was taken in the presence of the person. State v. Davis, Mo., 58 S.W.2d 305, 308– 309 [8, 9], and cases there cited. Therefore, for brevity and clarity, in referring to the money having been taken from the person of Wilma Otto, I use the word "person" in the sense that it was from her possession and in her presence that the money was taken.

agent from whose person the money was taken, was put in fear of some immediate injury to her person,[2] or that all, Granville Cook, Shirley Recar *and* Wilma Otto, were put in fear, the instruction would not be subject to the objection noted.

For the reasons stated, I would reverse the judgment and remand the case for a new trial.

2. State v. Emmons, 285 Mo. 54, 225 S.W. 894, 895 [3].